ACCEPTED
13-15-00246-CV
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
7/6/2015 4:51:05 PM
CECILE FOY GSANGER
CLERK

## NO. 13-15-00246-CV

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
7/6/2015 4:51:05 PM
CECILE FOY GSANGER
Clerk

# IN THE COURT OF APPEALS
# FOR THE THIRTEENTH DISTRICT OF TEXAS
# AT CORPUS CHRISTI/EDINBURG, TEXAS

**Stripes LLC,**

**Appellant/Defendant,**

**v.**

**Hazem Mrayyan,**

**Appellee/Plaintiff.**

## On Appeal from County Court at Law Number One of Nueces County, Texas
## The Honorable Robert J. Vargas, Judge Presiding

## APPELLANT'S BRIEF

## Oral Argument Requested

Gary D. Sarles
State Bar No. 17651100
O. Paul Dunagan
State Bar No. 06202700
**SARLES & OUIMET**
900 Jackson Street , Suite 370
Dallas, Texas 75202
Telephone:  (214) 573-6300
Facsimile:   (214) 573-6306
gsarles@sarleslaw.com
dunagan@sarleslaw.com

**ATTORNEYS FOR APPELLANT**

## IDENTITY OF PARTIES AND COUNSEL

**Appellant**:

Stripes LLC

Gary D. Sarles
State Bar No. 17651100
O. Paul Dunagan
State Bar No. 06202700
**Sarles & Ouimet**
370 Founders Square
900 Jackson Street
Dallas, Texas 75202
Telephone: 214.573.6300
Facsimile: 214.573.6306
gsarles@sarleslaw.com
dunagan@sarleslaw.com

**Appellee:**

Hazem Mrayyan

Rudy Gonzales, Jr.
State Bar No. 08121700
Todd A. Hunter, Jr.
State Bar No. 24087774
Marion M. Reilly
State Bar No. 24079195
**Hilliard Munoz Gonzales LLP**
719 S. Shoreline Boulevard, Suite 500
Corpus Christi, Texas 78401
Telephone:  361-882-1612
Facsimile:  361-882-3015
rudyg@hmglawfirm.com
kimberly@hmglawfirm.com
todd@hmglawfirm.com
marion@hmglawfirm.com

David T. Burkett
State Bar No. 03410500
**The Burkett Law Firm**
538 S. Tancahua
Corpus Christi, Texas 78401
Telephone:  361-882-8822
Facsimile:  361-882-0733
olivia@theburkettlawfirm.com

i

# TABLE OF CONTENTS

**IDENTITY OF PARTIES AND COUNSEL**...................................................... i

**TABLE OF CONTENTS** ...............................................................ii

**INDEX OF AUTHORITIES**........................................................... vi

**STATEMENT OF THE CASE**........................................................xiii

**STATEMENT REGARDING ORAL ARGUMENT** ...................................xiv

**ISSUES PRESENTED**................................................................... xv

1.    Whether the Trial Court abused its discretion by enjoining Stripes and the DSI Arbitration?

2.    Whether the Trial Court abused its discretion by extending the injunction against Stripes and the DSI Arbitration?

3.    Whether Plaintiff's applications for injunctive relief and the Trial Court's temporary injunction orders are void for having violated the stay imposed by Section 171.025 of the Texas Civil Practice and Remedies Code and formalized in the Trial Court's December 2, 2015 Agreed Stay Order?

4.    Whether Plaintiff's applications for a temporary injunction were properly verified and properly before the Trial Court?

5.    Whether Plaintiff failed to plead and prove a cause of action?

6.    Whether the temporary injunction orders improperly destroy rather than preserve the status quo?

7.    Whether Plaintiff established imminent, irreparable harm?

   A.    Whether the Trial Court has the right to decide arbitrability when the Election And Arbitration Agreement and the DSI Rules provide that the DSI arbitrator is to decide all arbitrability disputes and challenges?
   B.    Whether Plaintiff waived any objection to the DSI arbitrator's jurisdiction?

8.      Whether Plaintiff proved a probable right to the injunctive relief sought?

     A.     Whether Plaintiff proved that the courts have the right to decide arbitrability disputes under the Election And Arbitration Agreement?

     B.     Whether Plaintiff proved that he has the right to trial by jury?

          1.     Whether Plaintiff proved the Election And Arbitration Agreement is unenforceable?

          2.     Whether Plaintiff ratified the Election And Arbitration Agreement?

          3.     Whether the Agreed Stay Order independently obligates Plaintiff to arbitrate as a Rule 11 agreement?

9.      Whether Stripes intentionally, unequivocally waived its arbitration rights?

**ABBREVIATIONS AND RECORD REFERENCES** ..................................... xiv

**STATEMENT OF FACTS** ................................................................. 1

The Mrayyan Brothers. ...................................................................... 1

The Election And Arbitration Agreement and ERISA Plan. ................................ 3

Plaintiff Accepted the Terms of the Election And Arbitration Agreement ........... 5

Plaintiff's March 27, 2013 On-the-Job Injury at Stripes ...................................... 7

Payments by the Plan. ........................................................................ 7

Plaintiff's Counsel's Knowledge of the Plan's Payments. ................................... 8

Stripes Added to this Lawsuit. ................................................................ 10

The December 2, 2014 Agreed Stay Order ............................................... 11

Plaintiff's March 6 and 19, 2015 Demands for Arbitration. ............................... 12

The Plan's Plea in Intervention .............................................................. 13

The Plan's Questioning of Dr. Snook. ...................................................... 15

The DSI Arbitration ................................................................................ 16

Plaintiff's Applications to Enjoin the DSI Arbitration ........................... 17

Stripes' Filings in this Court ................................................................. 18

**SUMMARY OF THE ARGUMENT** ..................................................... 20

**ARGUMENT** ........................................................................................ 26

I.      PLAINTIFF'S APPLICATIONS FOR INJUNCTIVE RELIEF AND
        THE ORDERS GRANTING IT ARE ALL VOID. ...................................... 26

II.     IN ADDITION TO BEING VOID, PLAINTIFF'S FIRST AMENDED
        APPLICATION WAS ALSO NOT PROPERLY VERIFIED, AND
        PLAINTIFF'S VERIFIED FIFTH AMENDED PETITION WAS NOT
        PROPERLY BEFORE THE TRIAL COURT. ............................................ 28

III.    PLAINTIFF FAILED TO PLEAD AND PROVE A CAUSE
        OF ACTION ...................................................................................... 32

IV.     THE TEMPORARY INJUNCTION DESTROYED
        THE STATUS QUO ............................................................................ 38

V.      PLAINTIFF FAILED TO ESTABLISH IMMINENT, IRREPARABLE
        HARM. ............................................................................................. 43

        A.   Plaintiff has no right to have the Trial Court decide arbitrability;
             Arbitrator Black decides all arbitrability disputes. ............................... 44

        B.   Plaintiff has waived any objection to Arbitrator Black's jurisdiction. .. 48

VI.     PLAINTIFF FAILED TO PROVE A PROBABLE RIGHT TO THE
        INJUNCTIVE RELIEF SOUGHT. ........................................................ 51

        A.   Plaintiff failed to prove that the courts have the right to decide
             arbitrability disputes. ............................................................................ 51

        B.   Plaintiff failed to prove that he has the right to trial by jury. ............... 52

iv

1. The Election And Arbitration Agreement is enforceable. ............53

2. Plaintiff ratified the Election And Arbitration Agreement. .........58

3. The Agreed Stay Order obligates Plaintiff to arbitrate. ...............60

VII. STRIPES DID NOT WAIVE ITS ARBITRATION RIGHTS. ...................61

**CONCLUSION** .......................................................................................63

**PRAYER** ................................................................................................64

**CERTIFICATE OF SERVICE** ...........................................................64

**CERTIFICATE OF COMPLIANCE WITH TRAP 9.4(i)(3)** ..........................65

# INDEX OF AUTHORITIES

## Cases

*8100 N. Freeway Ltd. v. City of Houston*, 329 S.W.3d 858
(Tex. App.—Houston [14th Dist.] 2010, no pet.) .........................................42

*Adust Video v. Nueces County*, 996 S.W.2d 245
(Tex. App.—Corpus Christi, 1999, no pet.)..................................................34

*Akins v. Citizens Nat'l Bank*, 217 S.W.2d 199
(Tex. Civ. App.—El Paso 1948, writ ref'd) ..................................................61

*Aspri Investments, LLC v. Afeef*, 2011 Tex. App. LEXIS 7082
(Tex. App.—San Antonio Aug. 31, 2011, pet. dism'd)(mem. op .) .............48

*Associate Employers Lloyds v. Howard*, 156 Tex. 277, 294 S.W.2d 706 (1956) ...56

*Aviles v. Russell Stover Candies, Inc.*, 559 Fed. Appx. 413,
2014 U.S. App. LEXIS 6248 (5th Cir. April 4, 2014) ...........................45, 52

*Ballenger v. Ballenger*, 668 S.W.2d 467 (Tex. App.—Corpus Christi 1984,
writ dism'd w.o.j.) ...................................................................................22, 38

*Barker v. Roelke*, 105 S.W.3d 75 (Tex. App.—Eastland 2003, pet. denied) ..........60

*Burlington Resources Oil & Gas Co. v. San Juan Basin Royalty Trust*,
249 S.W.3d 34 (Tex. App.—Houston [1st Dist.] 2007, pet. denied)......47, 52

*Bustos v. Intex Aviation Services, Inc.*, 1996 U.S. Dist. LEXIS 14475
(N.D. Tex. Aug. 26, 1996)(Buchmeyer, C.J.) .................................................59

*Butnaru v. Ford Motor Co.*, 84 S.W.3d 198 (Tex. 2002)......................32, 34, 43, 51

*Cantella & Co. v. Goodwin*, 924 S.W.2d 943 (Tex. 1996) .....................................54

*Cantu v. Holiday Inns*, 910 S.W.2d 113
(Tex. App.—Corpus Christi 1995, writ denied)..............................................28

*Circuit City Stores v. Curry*, 946 S.W.2d 486
(Tex. App.—Fort Worth 1997, orig. proceeding) ..........................................50

*City of Arlington v. Dallas-Fort Worth Safety Coach Co.*, 270 S.W. 1094 (Tex. Civ. App.—Fort Worth 1925, no writ) ................................28

*Contec Corp. v. Remote Solution Co.*, 398 F.3d 205 (2d Cir. 2005) ......................48

*D. Wilson Constr. Co. v. McAllen Ind. Sch. Dist.*, 848 S.W.2d 226 (Tex. App.—Corpus Christi 1992, writ dism'd w.o.j.) ...............23, 43, 48, 54

*De Villagomes v. First Nat'l Bank-Edinburg,* 2005 Tex. App. LEXIS 6175 (Tex. App.—Corpus Christi 2005, pet. denied)(mem. op.) .........................55

*Ernst & Young LLP v. Martin*, 278 S.W.3d 497 (Tex. App.—Houston [14th Dist.] 2009, no pet.) ..........................................45

*EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87 (Tex.1996) ....................................53, 54

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995) ............................45

*Forest Oil Corp. v. McAllen*, 268 S.W.3d 51 (Tex. 2008) ......................................45

*Gen. Tel. Co. v. City of Wellington*, 294 S.W.2d 385 (Tex. 1956) .........................42

*Guynn v. Corpus Christi Bank & Trust*, 580 S.W.2d 902 (Tex. Civ. App.—Corpus Christi 1979, writ ref'd n.r.e) ..............................61

*Guzman v. Inter National Bank*, 2008 Tex. App. LEXIS 2034, 2008 WL 739828 (Tex. App.—Corpus Christi 2008, no pet.)(mem. op.) .......................................................................56

*Haddock v. Quinn*, 287 S.W.3d 158 (Tex. App.—Fort Worth 2009, pet. denied)...........................................47, 52

*Hood v. Amarillo Nat'l Bank*, 815 S.W.2d 545 (Tex. 1991) ..................................27

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002) ................................45

*IHS Acquisition No. 131, Inc. d/b/a Horizon Healthcare Center at El Paso v. Iturralde*, 387 S.W.3d 785 (Tex. App.—El Paso, 2012, no pet.)............46, 52

*IHS Acquisition No. 171, Inc. d/b/a Mesa Hills Specialty Hospital v. Beatty-Ortiz*, 387 S.W.3d 799 (Tex. App.—El Paso, 2012, no pet.) ......46, 52

*Indemnity Ins. Co. of North America v. W.L. Macatee & Sons*, 129 Tex. 166, 101 S.W.2d 553 (1937) ......................................................55

*In re AdvancePCSHealth LP*, 172 S.W.3d 603 (Tex. 2005) ...................................53

*In re Bank One*, 216 S.W.825 (Tex. 2007) ..............................................................62

*In re Big 8 Food Stores, Ltd.*, 166 S.W.3d 869 (Tex. App.—El Paso 2005, orig. proceeding)..........................................55, 59

*In re Border Steel, Inc.*, 229 S.W.3d 825 (Tex. App.—El Paso 2007, orig. proceeding)..........................................37, 59

*In re Bruce Terminix Co.*, 988 S.W.2d 702 (Tex. 1998) ..........................................62

*In re Burton, McCumber & Cortez, LLP*, 115 S.W.3d 235 (Tex. App.—Corpus Christi 2003, orig. proceeding)........................23, 44, 48

*In re Consolidated Freightways*, 75 S.W.3d 147 (Tex. App.—San Antonio 2002, orig. proceeding)......................................27

*In re D. Wilson Constr. Co.*, 196 S.W.3d 774 (Tex. 2006) ...................................62

*In re FirstMerit Bank, N.A.*, 52 S.W.3d 749 (Tex. 2001)..................................32, 34

*In re HEB Grocery Co., L.P.*, 299 S.W.3d 393 (Tex. App.—Corpus Christi 2009, orig. proceeding)...................................59

*In re Helena Chem. Co.*, 286 S.W.3d 492 (Tex. App.—Corpus Christi 2009, orig. proceeding)...................................26

*In re Hospitality Employment Group,* 234 S.W.3d 832 (Tex. App.—Dallas 2007, orig. proceeding)...............................................50

*In re McKinney*, 167 S.W.3d 833 (Tex. 2005) ........................................................54

*In re MetroPCS Communs., Inc.*, 391 S.W.3d 329
(Tex. App.—Dallas 2013, orig. proceeding)..................................................28

*In re Neutral Posture, Inc.*, 135 S.W.3d 725
(Tex. App.—Houston [1st Dist.] 2003, orig. proceeding) ...........................47

*In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004)...............................................21, 38

*In re Nationwide Credit, Inc.*, 2009 Tex. App. LEXIS 2243
(Tex. App.—Corpus Christi 2009, orig. proceeding)(mem. op.)..................26

*In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571 (Tex. 1999)...................46, 53

*In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672 (Tex. 2006) ...............................53

*In re Pediatrix Medical Services, Inc.*, 2005 Tex. App. LEXIS 5861
(Tex. App.—Dallas 2005, orig. proceeding)(mem. op.) ..............................26

*In re Union Carbide Corp.*, 273 S.W.3d 152 (Tex. 2008) ......................................61

*In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759 (Tex. 2006) .....................................62

*In re Weekly Homes, L.P.*, 180 S.W.3d 127 (Tex. 2005) ........................................44

*Kotz v. Imperial Capital Bank*, 319 S.W.3d 54
(Tex. App.—San Antonio 2010, no pet.) ......................................................35

*Land Title Co. v. F.M. Stigler, Inc.*, 609 S.W.2d 754 (Tex. 1980)..........................59

*Law Funder, LLC v. Law Offices of Douglas A. Allison*,
2014 Tex. App. LEXIS 2504, 2014 WL 895512
(Tex. App.—Corpus Christi March 6, 2014, no pet.)(mem. op.)..................34

*Morrison v. Insurance Company of North America*,
69 Tex. 353, 6 S.W.605 (1887) ....................................................................54

*Momentis U.S. Corp. v. Weisfeld*, 2014 Tex. App. LEXIS 8000,
2014 WL 3700697 (Tex. App.—Dallas July 23, 2014,
no pet.)(mem. op.) .................................................................................47, 52

*Nautical Landings Marina, Inc. v. First Nat'l Bank*, 791 S.W.2d 293
(Tex. App.—Corpus Christi 1990, writ denied)..............................................26

*Nguyen Ngoc Giao v. Smith & Lam, P.C.*, 714 S.W.2d 144
(Tex. App.—Houston [1st Dist.] 1986, no writ) ...........................................56

*Ouzene v. Haynes*, 2012 Tex. App. LEXIS 2888, 2012 WL 1249420
(Tex. App.—Houston [1st Dist.] 2012, pet. denied)(mem. op.) ...................49

*Perry Homes v. Cull*, 258 S.W.3d 580 (Tex. 2008)..................................................62

*Petrofac, Inc. v. Dynmcdermott Petrol. Ops. Co.*, 687 F.3d 671 (5th Cir. 2012) ...48

*Pilgrim Investment Corp. v. Reed*, 156 Wis. 2d 677, 457 N.W.2d 544
(Wis. Ct. App.), *review denied*, 458 N.W.2d 533 (Wis. 1990).....................50

*Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366 (Fed. Cir. 2006) ...........................47

*Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010)....................22, 45, 46, 52

*Rio Grande Xarin, II, Ltd. v. Wolverine Robstown, LP*,
2010 Tex. App. LEXIS 5189, 2010 WL 2697145 (Tex. App.—
Corpus Christi July 6, 2010, pet. dism'd)(mem. op)................... 44-45, 47, 52

*Rogers v. B&R Dev., Inc.*, 523 S.W.2d 15
(Tex. Civ. App.—Fort Worth 1975, no writ) ................................................58

*Royston, Rayzor, Vickery & Williams, LLP v. Lopez*,
2015 Tex. LEXIS 622 (Tex. June 26, 2015) ........................21, 24, 34, 53, 54

*Saxa v. DFD Architecture Inc.*, 312 S.W.3d 224
(Tex. App.—Dallas 2010, pet. denied)..................................................47, 52

*Schlumberger Tech. Corp. v. Baker Hughes, Inc.*, 355 S.W.3d 791
(Tex. App.—Houston [1st Dist.] 2011, no pet.)............................................48

*Star-Tel, Inc. v. Nacogdoches Telecommunications, Inc.*, 755 S.W.2d 146
(Tex. App.—Houston [1st Dist.] 1988, no writ) ...........................................27

*Tamez v. Southwestern Motor Transp., Inc.*, 155 S.W.3d 564
 (Tex. App.—San Antonio 2004, no pet.) ......................................56

*Terminix Int'l Co. v. Palmer Ranch Ltd.*, 432 F.3d 1327 (11th Cir. 2005)............48

*Texas State Board of Medical Examiners v. McKinney*, 315 S.W.2d 387
 (Tex. Civ. App.—Waco 1958, no writ)....................................28, 33

*Thomas Petroleum, Inc. v. Morris*, 355 S.W.3d 94 (Tex. App.—Houston
 [1st Dist.] 2011, pet. denied), *cert. denied*, 133 S. Ct. 210 (2012) ..............49

*Trevino v. Houston Orthopedic Center*, 831 S.W.2d 341
 (Tex. App.—Houston [14th Dist.] 1992, writ denied) .................................60

*Vera v. North Star Dodge Sales, Inc.*, 989 S.W.2d 13
 (Tex. App.—San Antonio 1998, no pet.) ......................................55

*Volt Info. Sciences, Inc. v. Board of Trustees*, 489 U.S. 468 (1989).......................46

*Westfield Dev., Inc. v. Rubashkin*, 2007 Tex. App. LEXIS 1154
 (Tex. App.—Houston [1st Dist.] 2007, no pet.)(mem. op.) .........................58

*Williams v. Bagley*, 875 S.W.2d 808 (Tex. App.—Beaumont 1994, no writ) ........28

## Statutes

Texas Civil Practice and Remedies Code Section 171.025 ........................20, 26, 63

## Rules

Texas Rule of Civil Procedure 11 .......................................... 12, 24, 40, 60, 61, 63

Texas Rule of Civil Procedure 14 .......................................................28

Texas Rule of Civil Procedure 21 ..................................................20, 31

Texas Rule of Civil Procedure 40 ..................................................15, 61

Texas Rule of Civil Procedure 60 ..................................................14, 61

Texas Rule of Civil Procedure 682 ..................................................................28, 33

Texas Rule of Civil Procedure 683.......................................................................21

Dispute Solutions, Inc. Arbitration Rule 5 ....................................23, 47, 49, 52, 63

American Arbitration Association Employment Arbitration Rule 6.......................49

## STATEMENT OF THE CASE

This is an interlocutory appeal of the Trial Court's temporary injunction order, Appendix Tab 1, (and a second order extending the temporary injunction, Appendix Tab 2) enjoining Appellant Stripes LLC ("**Stripes**") from going forward in an arbitration proceeding that Appellee/Plaintiff Hazem Mrayyan ("**Plaintiff**") initiated against Stripes before Dispute Solutions, Inc. ("**DSI**").   The temporary injunction orders enjoin Stripes from having the DSI arbitrator decide whether an arbitration agreement between Plaintiff and Stripes is valid and enforceable. Appendix Tabs 1 and 2.   The temporary injunction orders enjoin the DSI Arbitration until after the Trial Court conducts a hearing, now set for July 28, 2015, on whether the agreement is unconscionable or was fraudulently induced. Appendix Tab 2 at ¶5.

# STATEMENT REGARDING ORAL ARGUMENT

Stripes believes that oral argument would assist in the Court's understanding and expeditious resolution of this interlocutory appeal. The record is somewhat voluminous, and oral argument would give the Court an opportunity to question counsel about the injunction proceedings in the Trial Court and the evidence relating to the issues on this accelerated appeal. The Trial Court's ruling raises important questions about the effect of an employee's undisputed signature on an arbitration agreement and conflicts with decisions by the United States Supreme Court, the U.S. Fifth Circuit Court of Appeals and the El Paso Court of Appeals that an arbitrator, rather than the courts, is authorized to decide arbitrability issues when the parties' arbitration agreement contains an unchallenged "delegation provision" or incorporates arbitration rules that expressly reserve arbitrability issues for the arbitrator's determination.

# ISSUES PRESENTED

1.  Whether the Trial Court abused its discretion by enjoining Stripes and the DSI Arbitration?

2.  Whether the Trial Court abused its discretion by extending the injunction against Stripes and the DSI Arbitration?

3.  Whether Plaintiff's applications for injunctive relief and the Trial Court's temporary injunction orders are void for having violated the stay imposed by Section 171.025 of the Texas Civil Practice and Remedies Code and formalized in the Trial Court's December 2, 2015 Agreed Stay Order?

4.  Whether Plaintiff's applications for a temporary injunction were properly verified and properly before the Trial Court?

5.  Whether Plaintiff failed to plead and prove a cause of action?

6.  Whether the temporary injunction orders improperly destroy rather than preserve the status quo?

7.  Whether Plaintiff established imminent, irreparable harm?

    A.  Whether the Trial Court has the right to decide arbitrability when the Election And Arbitration Agreement and the DSI Rules provide that the DSI arbitrator is to decide all arbitrability disputes and challenges?

    B.  Whether Plaintiff waived any objection to the DSI arbitrator's jurisdiction?

8.      Whether Plaintiff proved a probable right to the injunctive relief sought?

A.      Whether Plaintiff proved that the courts have the right to decide arbitrability disputes under the Election And Arbitration Agreement?

B.      Whether Plaintiff proved that he has the right to trial by jury?

1.      Whether Plaintiff proved the Election And Arbitration Agreement is unenforceable?

2.      Whether Plaintiff ratified the Election And Arbitration Agreement?

3.      Whether the Agreed Stay Order independently obligates Plaintiff to arbitrate as a Rule 11 agreement?

9.      Whether Stripes intentionally, unequivocally waived its arbitration rights?

## ABBREVIATIONS AND RECORD REFERENCES

"**Plaintiff**" refers to Plaintiff Hazem Mrayyan, Plaintiff in this lawsuit and the Claimant in the DSI Arbitration he filed against Stripes.

"**Stripes**" refers to Defendant Stripes LLC, the remaining Defendant in this lawsuit and Respondent in the DSI Arbitration.

"**Sammy Mrayyan**" refers to Plaintiff's older brother, Salameh "Sammy" Mrayyan, the Stripes store manager who presented the Election And Arbitration Agreement to Plaintiff.

"**Election And Arbitration Agreement**" refers to the Election And Arbitration Agreement governed by the FAA and accepted by Plaintiff on December 14, 2012, and the incorporated Arbitration Procedures from the Plan's SPD. Appendix Tab 4.

"**Arbitration Procedures**" refers to the Arbitration Procedures in Section IX of the Plan's SPD (provided to Appellant on December 14, 2012) that are expressly incorporated into the Arbitration Agreement and that specify the DSI Rules.

"**FAA**" refers to the Federal Arbitration Act, 9 U.S.C. §1 *et seq.*

"**Plan**" refers to the Susser Holdings, L.L.C. Employee Injury Benefit Plan.

"**SPD**" refers to the Plan's Summary Plan Description that contains, *inter alia*, the Arbitration Procedures.

"**DSI**" refers to Dispute Solutions, Inc., the arbitration service specified in the Election And Arbitration Agreement's Arbitration Procedures and administering the DSI Arbitration.

"**DSI Arbitration**" refers to the arbitration proceeding initiated by Plaintiff on March 6, 2015 before DSI.

"**DSI Rules**" refers to DSI's Arbitration Rules that under the Arbitration Procedures and the Agreed Stay Order govern the DSI Arbitration.

"**Arbitrator Black**" refers to former President of the State Bar of Texas, Robert A. "Bob" Black, the arbitrator selected by Plaintiff and Stripes to preside over the DSI Arbitration.

"**Merrell**" refers to Merrell Lease Service, Inc. in Gregory, Texas, the owner of the truck that ran and backed over Plaintiff while he was working at Stripes on March 27, 2013, formerly a Defendant in this lawsuit before settling with Plaintiff.

"**Powell**" refers to Eric Scott Powell, the Merrell employee who was operating the pickup truck on March 27, 2013 that struck Plaintiff, formerly a Defendant in this lawsuit before settling with Plaintiff.

"**Mr. Burkett**" refers to David T. Burkett, Esq., Plaintiff's original counsel in this lawsuit.

"**Mr. Gonzales**" refers to Rudy Gonzales, Jr., Plaintiff's current lead counsel in this lawsuit and the DSI Arbitration.

"**Sarles**" refers to Gary D. Sarles, Esq., Stripes' lead counsel in this lawsuit and in the DSI Arbitration.

"**Application**" refers to Stripes' Original Answer And Application For Order For Arbitration filed in this lawsuit on October 8, 2014.

"**Agreed Stay Order**" refers to the Trial Court's December 2, 2014 order negotiated by Mr. Gonzales and Sarles and submitted to the Trial Court for entry without hearing or contest. Appendix Tab 5.

"**Motion To Lift Stay**" refers to Plaintiff's Motion To Lift Stay Of Proceedings And Dismiss Stripes LLC's Order For Arbitration filed April 24, 2015.

The Clerk's Record consists of twenty-one (21) volume. References to the Clerk's Record are in the format: **[volume]CR[page-page]**.

The Supplemental Clerk's Record consists of one (1) volume. References to the Supplemental Clerk's Record are in the format: **SCR [page-page]**.

The Reporter's Record consists of five (5) volumes. References to the Reporter's Record are in the format: **RR[volume] [p._,l._ - p._,l._]**.

The Supplemental Reporter's Record consists of one (1) volume. References to the Supplemental Reporter's Record are in the format: **SRR [p._,l._ - p._,l._]**.

## STATEMENT OF FACTS

The following facts should be undisputed.  *See* RR3 p.76,ll.14-15.

**The Mrayyan Brothers**

1.     Plaintiff is a native of Jordan, whose wife and children still live there. RR3 p.157,ll.1-11; DX24 at ¶2.

2.     Plaintiff primarily speaks Arabic, RR3 p.10,l.6, but as the Trial Court stated, "We all understand that [Plaintiff] speak[s] some English and . . . understand[s] some English," and twice instructed Plaintiff to wait for the Arabic translation before answering questions.   RR3 p.218,l.17 – p.219,l.13;  RR3 p.209,ll.14-18; *see* RR3 p.194,l.21; p.200,l.22; p.203,ll.14-20; p.208,l.8; p.226,ll.18-19;  p.229,l.22 – p.230,l.3;  p.231,l.6;  p.246,ll.9-10;  p.248,l.17;  p.250,ll.10-11; p.253,l.17 – p.254,l.2; p.254,l.16 (Plaintiff answering questions in English or before the questions were translated for him into Arabic).

3.     Plaintiff took courses in English in high school in Jordan, RR3 p.217,ll.4-9, and graduated from high school 1987.  DX14 at p.8.  Plaintiff won a scholarship to study law in Yemen and attended school there for one or two years. DX14 at p.8; RR3 p.221,ll.2-9.  In Jordan, Plaintiff obtained a college degree in Business Administration in 1993.  RR3 p.221,ll.16-20.

4.     Plaintiff worked as an accountant at a commissary in Jordan for three years, RR3 p.222,ll.1-17, and then worked in Jordan until 2007 in accounting and

check verification for United Bank and then City Town Bank. RR3 p.222,ll.18-24.

5.    Plaintiff came to the United States in 2007 and worked in Nashville, Tennessee at a gas station, then at a gas station in Weir, Mississippi, and later at a convenience store in Starkville, Mississippi. DX14 at p.11; RR3 p.223,ll.5-12; RR4 p.39,l.2 – p.41,l.6.

6.    While living in Starkville, Plaintiff attended Mississippi State University ("**MSU**"), where he studied Business Administration, taking courses taught in English, with English textbooks and English-speaking professors. DX15; RR3 p.177,l.23 - p.178,l.3. While at MSU, Plaintiff passed an English Composition course. DX16; RR3 p.227,l.2 – p.228,l.19. Plaintiff passed his classes at MSU, was never placed on academic probation, and the only reason that Plaintiff ceased attending MSU was because Plaintiff sold his gas stations/convenience store business in Starkville and followed his brother to Corpus Christi. RR3 p.177,l.2 – p.178,l.3; DX26 at p.3.

7.    Plaintiff managed and owned two Chevron gas stations in Starkville, with several employees at each station. DX26 at p.3; RR3 p.178,l.22 - p.179,l.11. Plaintiff had no language barrier problems with customers and employees while operating his gas stations in Starkville. RR3 p.179,ll.19-24. Plaintiff and his older brother, Salameh Mrayyan ("**Sammy Mrayyan**"), leased the Chevrons; Sammy Mrayyan would explain the leases to Plaintiff, who signed them; Plaintiff does not

remember if they had arbitration provisions. RR3 p.200,l.14 – p.202,l.4. Plaintiff took out a bank loan on one of his Chevrons, RR3 p.202,l.15 – p.203,l.9, and sold his Chevron business in 2012. RR3 p.203, l.21 – p.204,l.8; RR4 p.41,l.16 – p.42,l.23.

8.     Plaintiff's brother Sammy Mrayyan moved to the United States from Jordan in 1985. RR4, p.26,l.16 – p.27,l.6. He obtained a Bachelor's Degree in Aerospace in 1995 from Middle Tennessee State University, obtained a Master's Degree in Aerospace from it in 1996, RR4 p.27,l.9 – p.28,l.15, and received a post-Master's education degree from it in in administration and supervision in 1997. RR4 p.30,l.17 – p.31,l.17. He moved to Florida in 2004 and worked on his Ph.D. in computer technology at [Nova] Southeastern University. He completed the Ph.D. course work but did not finish his dissertation. In 2005, he was awarded another Master's Degree, in computer technology. RR4 p.35,l.18 – p.36,l.4, p.37,ll.6-13.

9.     Over the years, Sammy Mrayyan worked and owned convenience stores in LaVergne and Nashville, Tennessee, RR4 p.31,l.22 – p.33,l.14, in Florida, RR4 p.36,ll.3-9, and then again in Nashville. RR4 p.37,l.18 – p.38,l.14. He owned and operated a travel agency in Jordan from 2000-2003, RR4 p.33,l.19 – p.34,l.18, and then ran wireless AT&T stores in North Carolina until 2004. RR4 p.35,ll.2-15.

10.     Sammy Mrayyan moved to Corpus Christi in 2012 to work at Stripes, and Plaintiff moved down a little later. RR4 p.44,ll.8-23. After working as a manager in training for Stripes, Sammy Mrayyan was promoted to general manager.

RR4 p.45,l.16 – p.46,l.7. In 2012-2013, he was training about 30 employees for a new store to be built. RR4 p.47,ll.2-24. He trained employees with online computer training that an employee has to pass before getting into the field. RR4 p.47,l.25 – p.48,l.13. As a general manager, his boss was a Stripes Area Manager, Kamal Ghanem, a Jordanian friend of his. RR4 p.49,ll.3-14. Mr. Ghanem trained him on the Election And Arbitration Agreement. RR3 p.79,ll.1-9.

11.     Plaintiff worked as a security guard for Weiser Security at the Corpus Christi Airport in 2012; his brother Sammy Mrayyan explained and translated the new-hire paperwork that was in English and may have included an arbitration provision. RR3 p.224,l.3 – p.225,l.21.

**The Election And Arbitration Agreement and ERISA Plan**

12.     Stripes is a nonsubscriber to the optional Texas Workers' Compensation Act and does not carry workers' compensation insurance. PX1 at p.1; PX2 at p.1; RR3 at p.12,ll.13-18. Stripes has a benefit plan under the Employee Retirement Income Security Act of 1974 ("**ERISA**"), the Susser Holdings, LLC Employee Injury Benefit Plan ("**Plan**"), that provides benefits for occupational injuries. PX1 at p.1; PX2 at p.1; RR3 at p.13,ll.2-6.

13.     By accepting the terms of an Election And Arbitration Agreement, a Stripes employee becomes eligible for benefits from the Plan for occupational injuries and agrees to mediate and arbitrate disputes with Stripes. PX1 at p.1; PX2

- 4 -

at pp.1-2; RR3 p.84,ll.1-13. By rejecting the terms of an Election And Arbitration Agreement, an employee is not eligible for benefits from the Plan for occupational injuries but does not agree to arbitrate disputes with Stripes. PX1 at p.1; PX2 at pp.1-2; RR3 p.84,ll.1-13.

14. Stripes employees are required to sign the Election And Arbitration Agreement, but its signature page gives the employee the option either to accept or reject its terms. RR3 p.82,ll.3-12. Its signature page, PX2 at p.4, provides in part:

**CHECK ONLY <u>ONE</u> OF THE FOLLOWING BOXES:**
☐ I <u>agree</u> to the terms of this Agreement. **OR** ☐ I <u>reject</u> the terms of this Agreement.

15. Because the Election And Arbitration Agreement is optional for an employee, accepting its terms is <u>not</u> a condition of employment. RR3 p.83,l.2 – p.84,l.13. In fact, an employee who accepts the terms of the Election And Arbitration Agreement has 5 days after accepting it to revoke the acceptance. PX2 at p.3; RR3 at p.135,l.22 – p.136,l.14.

**<u>Plaintiff Accepted the Terms of the Election And Arbitration Agreement</u>**

16. On December 14, 2012, Plaintiff applied for part-time employment with Stripes and signed an Election And Arbitration Agreement. PX2 at p.4; RR3 p.159,ll.8-23; RR3 p.14,ll.23-24.

17. Sammy Mrayyan was the Stripes manager who printed it out and presented it to Plaintiff for signature, RR3 p.14,l.21 – p.15, l.6, and Sammy Mrayyan already had signed and accepted the terms of his own identical Election And

Arbitration Agreement on September 12, 2012, DX7 at p.4; RR3 p.132,l.21 – p.133,l.7, and subsequently served his own *pro se* Demand for Arbitration regarding his own asserted occupational injury at Stripes.  DX8, p.133,l.8 – p.135,l.18.

18.    "Sammy Mrayyan did not explain the meaning of the arbitration agreement to [Plaintiff] before [he] signed the Election And Arbitration Agreement.  Sammy Mrayyan did not explain any of the contents of the Election And Arbitration Agreement to [Plaintiff] before [he] signed it."  RR3 p.256,ll.3-16; DX24 at ¶6.

19.    When Plaintiff signed the Election And Arbitration Agreement he did not know anything about it, RR4 p.9,ll.3-9, and he does not remember seeing it or anyone from Stripes explaining it to him or discussing it with him.  RR3 p.160,ll.3-11.  Plaintiff's counsel has stipulated that no one explained any part of it to Plaintiff and that no one translated any part of it to him.  RR4 p.10,ll.17-20.

20.    When Plaintiff signed the Election And Arbitration Agreement he correctly followed the instructions on its signature page, properly checking only one of the two boxes, signing it on the signature line, printing his name, and dating his signature.  PX2 at p.4; RR3 p.81,l.14 – p.82,l.2.

21.    Plaintiff signed the Election And Arbitration Agreement because he needed to work, RR4 p.9,ll.3-9, but there was no economic duress by Stripes when Plaintiff signed it.  RR4 p.8,ll.1-16.

22.    At Stripes, Plaintiff took several online computerized training courses

in English and passed each one with between an 80% and 100% score. DX17; DX18; RR3 p.231,p.17 – p.233,l.9.

**Plaintiff's March 27, 2013 On-the-Job Injury at Stripes**

23. On March 27, 2013, Sammy Mrayyan asked Plaintiff to clean the "spill buckets" to the underground storage tanks in the parking area of the Stripes on Morgan in Corpus Christi. DX22 at p.3; RR3 p.11,ll.7-18.

24. A pickup truck owned by former Defendant Merrell Lease Service, Inc. ("**Merrell**") and driven by former Defendant Eric Powell ("**Powell**") stopped at the Stripes to use its air compressor near the spill buckets where Plaintiff was working. DX22 at p.3; RR3 p.11,ll.19-25; PX6 at Exhibit H (photos).

25. Powell asked Plaintiff for change and made eye contact with him several times before airing one of the truck's tires; Powell's passenger also spoke to Plaintiff. DX22 at p.3. Powell then pulled the truck forward, running over Plaintiff, and then backed up the truck, again running over him. RR3 p.12,ll.1-6.

**Payments by the Plan**

26. In reliance on Plaintiff's acceptance of the Election And Arbitration Agreement, the Plan began paying hundreds of thousands of dollars of benefits to Plaintiff and to his medical providers for the care of the injuries that he sustained on March 27, 2013. DX20; DX21; RR3 p.92,ll.3-14.

27.     In reliance on Plaintiff's acceptance of the Election And Arbitration Agreement, the Plan's Total Benefit Limit was increased from $250,000 to $450,000 to cover Plaintiff's on-going medical expenses.  RR3 p.94,l.15 – p.95,l.12.

28.     Plaintiff knew the Plan paid the official billing statements from the hospitals that he attended and for the treatment that he received.  RR3 p.235,l.11 – p.236,l.11; DX19 at pp.9-10; DX20.  Plaintiff also knew he was receiving a net weekly check from the Plan.  RR3 p.236,l.12 – p.237,l.24; DX20 at second page.

29.     On October 3, 2013, Plaintiff hired David Burkett, Esq. ("**Mr. Burkett**") to represent him on a contingent-fee basis; the fee agreement was in English; Sammy Mrayyan translated and explained its terms to Plaintiff.  RR3 p.207,l.12 – p.210,l.16; DX27.

**Plaintiff's Counsel's Knowledge of the Plan's Payments**

30.     In October of 2013, Respondent's counsel Gary Sarles ("**Sarles**") discussed the Plan's payment of benefits with Mr. Burkett, RR3 p.91,l.12 – p.92,l.14, explained that the Plan had paid hundreds of thousands of dollars of benefits in reliance on Plaintiff's acceptance of the Election And Arbitration Agreement, RR3 p.92,ll6-14, and then sent Mr. Burkett a November 6, 2013 letter enclosing the payment registers showing detailed information on each Plan Disability Benefits check to Plaintiff and Plan Medical Benefits check to his medical providers.  DX20.

31.     Although Stripes was not a party to this lawsuit at the time, *see* 1CR10-16, on December 18, 2013, Mr. Burkett used Sarles' November 6, 2013 letter and its itemization of payments in Plaintiff's answers to Merrell's first set of interrogatories.  DX19 at pp.9-10.  At that time, the total amount in Medical Benefits paid by the Plan was $397,524.64.  DX19 at p.10; DX20 at p.4.

32.     Plaintiff verified those interrogatory answers in English on December 18, 2013.  DX19 at p.14 ("I have read the foregoing Answers to Interrogatories designed to be filed in the above styled and numbered cause, have personal knowledge of the facts and allegations contained therein, and each and every fact and allegation contained therein is true and correct.").  Plaintiff subsequently verified his supplemental interrogatory answers in English.  DX22 at p.5 (same).

33.     While Plaintiff was represented by Mr. Burkett, the Plan continued paying thousands of dollars of benefits to Plaintiff with Mr. Burkett's knowledge.  RR3 p.92,l.15 – p.94,l.2, p.136,ll.17-24; DX9; DX20; DX21.  The Election And Arbitration Agreement provided to Mr. Burkett expressly states that "I agree that each and every time that I receive Plan benefits, or have Plan benefits paid to a medical provider on my behalf, I ratify and reaffirm this Agreement the same as if I had signed this Agreement again on the date the benefits were paid."  PX2 at p.3 of 4 (emphasis in original); RR3 at p.93,ll.5-22.

34.     Plaintiff has never repaid the more than $450,000 in Plan benefits paid in reliance on Plaintiff's acceptance of the terms of the Plan.  RR3 p.94,ll.3-14, p.95,l.19 – p.96,l.10, p.138,l.18 – p.140,l.10.

**Stripes Added to this Lawsuit**

35.     On July 16, 2014, Merrell filed a Third Party Petition against Stripes in this lawsuit, 1CR286-292, and on July 28, 2014, Plaintiff filed Plaintiff's First Amended Petition in this lawsuit, adding Stripes as a Defendant.  1CR308-318.

36.     On August 18, 2014, Plaintiff gave his deposition in this case in English and without the use of an interpreter, because Mr. Burkett represented to the defense attorneys that Plaintiff could give the deposition in English without an interpreter. RR3 p.90,l.11 – p.91,l.8.  Neither Mr. Burkett nor Plaintiff made any changes to Plaintiff's deposition transcript testimony.  DX23.

37.     On October 8, 2014, Stripes filed its Original Answer And Application For Order For Arbitration ("**Application**"), with Plaintiff's signed Election And Arbitration Agreement and the pertinent provisions of the Plan's Summary Plan Description ("**SPD**") attached as Exhibits 1 and 2.  1CR523-535; DX1; RR3 p.98,l.11 – p.99,l.10.  The Application asserted that the filing or "making" of the Application automatically stayed all claims against Stripes pursuant to Section 171.025(a) of the Civil Practice and Remedies Code.  1CR523-524; DX1 at p.2; RR3 p.99,ll.11-19.

## The December 2, 2014 Agreed Stay Order

38. After Plaintiff's lead counsel, Rudy Gonzalez ("**Mr. Gonzales**"), appeared in this lawsuit on September 25, 2014, 1CR516-517, Sarles and he discussed the Election And Arbitration Agreement and staying all of the claims against Stripes and agreed to an Order Granting Stripes LLC's Application For Order For Arbitration ("**Agreed Stay Order**"), 1CR570-571; DX2; RR3 p.99,l.20 – p.101,l.15, and agreed to stay the proceedings in this lawsuit against Stripes, to the language of the Agreed Stay Order, and to resolve any disputes between Plaintiff and Stripes in binding arbitration before Dispute Solutions, Inc. ("**DSI**"). RR3 p.104,ll.5-22, p.105,ll.15-19.

39. Mr. Gonzales never objected to the enforceability of the Election And Arbitration Agreement or asserted any defense to its enforceability in his discussions with Sarles during the negotiations regarding the Agreed Stay Order. RR3 p.106,l.16 – p.107,l.3.

40. The Agreed Stay Order states that it is "Agreed As To Form Only," not "Approved As To Form Only." 1CR571; DX2 at p.2; RR3 p.107,ll.8-14. Mr. Gonzales' partner signed the Agreed Stay Order for Plaintiff and had it filed with and signed by the Trial Court. 1CR571; DX2 at p.2; RR3 p.107,ll.15-21. Regarding the Agreed Stay Order, Mr. Gonzales admitted during his opening statement that "we did not contest it at that time." RR3 p.17,ll.15-16.

41.     The Agreed Stay Order was signed by the Trial Court on December 2, 2014.  1CR570; DX2 at p.1.  It provides:

> Defendant Stripes LLC having filed with its Original Answer an Application for Order for Arbitration requesting a formal written order enforcing the automatic stay imposed by Section 171.025(a) of the Civil Practice and Remedies Code on any further proceedings against Stripes LLC in this lawsuit, the Court is of the opinion that the statutory stay should be formalized by this Order.  It is, therefore,
>
> ORDERED that Plaintiff Hazem Mrayyan's claims and causes of action and all further proceedings against Defendant Stripes LLC be, and they hereby are, stayed pending resolution of these two parties' claims, causes of action and defenses in binding arbitration before Dispute Solutions, Inc. ("DSI") in accordance with their Election And Arbitration Agreement and the DSI Arbitration Rules.

42.     The Agreed Stay Order was not prepared to memorialize any oral ruling by the Trial Court on Stripes' Application; no hearing ever took place on Stripes' Application, because Mr. Gonzales and Sarles agreed to the Agreed Stay Order and submitted it to the Trial Court for entry without any hearing on the Application ever taking place; Sarles considered the Agreed Stay Order an agreed order or at least a Rule 11 agreement; Stripes relied on the Agreed Stay Order by not setting the Application for hearing before the Trial Court and by not participating in discovery.  RR3 p.107,l.4 – p.108,l.13, p.124,l.15 – p.125,l.12.

**Plaintiff's March 6 and 19, 2015 Demands for Arbitration**

43.     On March 6, 2015, Plaintiff's counsel sent "Hazem Mrayyan's Demand for Arbitration" to DSI and to Stripes at the address in the Election And Arbitration Agreement.  DX4; PX2 at pp.18-19; RR3 at p.113,ll.5-12.  By March 6, 2015, Mr.

Gonzales had been representing Plaintiff for six months and Mr. Burkett had been representing Plaintiff for 18 months, Plaintiff's expert reports had already been served, Plaintiff's experts' life care plan and psychologists' reports were in their possession, Dr. Pollock's neuropsychologist report had been provided, and both Plaintiff and Sammy Mrayyan had given their depositions. RR3 p.109,l.9 – p.111,l.21.

44. The March 6, 2015 Demand for Arbitration seeks no relief other than damages, is unconditional, contains no reservation of Plaintiff's rights, asserts no objection or defense to the arbitrator's jurisdiction, and says nothing about being filed to preserve the statute of limitations. DX4; RR3 p.112,l.6 – p.113,l.12.

45. After the March 6, 2015 Demand for Arbitration was sent to Stripes, Mr. Hunter, co-counsel with Mr. Gonzales, called Sarles to ask whether the March 6, 2015 Demand for Arbitration was sufficient to invoke arbitration, and Sarles told him that it did not appear that it had been filed with DSI. RR3 p.113,ll.13-23.

46. Plaintiff's counsel then electronically filed with DSI on March 19, 2015 a second Demand for Arbitration at DSI's website address provided by Sarles. DX5; RR3 p.113,l.24 – p.114,l.5. In the "Relief sought by the Employee" section of the March 19th Demand, Plaintiff only seeks damages. DX5 at pp.3-4.

47. The March 19, 2015 Demand for Arbitration is unconditional, contains no reservation of Plaintiff's rights, asserts no objection or defense to the arbitrator's

jurisdiction, says nothing about being filed to preserve the statute of limitations, and makes no contention that Plaintiff is not bound by the Election And Arbitration Agreement because he could not understand English, and Mr. Hunter made no such assertions in his conversation with Sarles prior to its filing with DSI. DX5; RR3 p.114,l.6 – p.115,l.23.

48.     The Agreed Stay Order was in place when Plaintiff's March 6 and 19, 2015 Demands for Arbitration were filed with DSI, and Plaintiff filed nothing with the Trial Court or DSI challenging the enforceability of the Election And Arbitration Agreement or DSI's jurisdiction. RR3 p.115,l.24 – p.116,l.21.

**The Plan's Plea in Intervention**

49.     After the Trial Court's December 2, 2014 entry of the Agreed Stay Order, Stripes did not participate in this lawsuit. RR3 p.120,l.23 – p.121,l.4.

50.     Because of concern that Plaintiff's counsel would not honor the Plan's subrogation rights regarding the $450,000 in Plan benefits paid to and for Plaintiff, RR3 p.118,ll.2-12, on December 29, 2014, the Plan filed a plea in intervention pursuant to Rule 60. 1CR572-579; DX6; RR3 p.117,ll.5-12. The Plan did not join this lawsuit as an additional plaintiff under Rule 40. RR3 p.117,l.20 - p.118,l.1. No objection was filed to strike the Plan's intervention. RR3 p.117,ll.13-16.

51.     Sarles and his firm were representing the Plan's interests after December 29, 2014 in this lawsuit, which were adverse to Plaintiff's interests

- 14 -

regarding the $450,000 in Plan benefits' recovery and congruent with Plaintiff's interests in recovering at least that amount from Defendants Merrell and Powell. RR3 p.118,l.23 – p.119,l.21.

**The Plan's Questioning of Dr. Snook**

52.     On March 30, 2015, Sarles appeared as counsel for the Intervenor at the deposition of Plaintiff's life care plan expert, Dr. Snook, PX5 at p.2, and after expressly explaining to Dr. Snook that Sarles represented the Plan, PX5 at p.164, asked Dr. Snook a series of questions about the life care plan in response to which he admitted that if Plaintiff underwent the surgeries and physical therapy in the plan, Plaintiff should be able to utilize the life care plan's six months of occupational therapy and then return to work.   PX5 at pp.204-205; RR3 p.148,l.15 – p.149,l.15.

53.     Shortly after that critical admission, Plaintiff's counsel objected to Sarles' questioning and instructed Dr. Snook not to answer any more of his questions during the deposition.  PX5 at pp.207-215; p.146,ll.22-24.

54.     Sarles' questioning of Dr. Snook furthered the Plan's interests by helping move Plaintiff's settlement demands on the Merrell's and Powell's liability insurer from $15 million to within its $6 million policy limit, resulting in a settlement of Plaintiff's claims against them for the $6 million policy limit and providing sufficient funds for the payment of the Plan's $450,000 subrogation lien.   RR3 p.122,l.24 – p.124,l.14; p.150,l.9 – p.153,l.4.

55.     Despite Plaintiff's $6,000,000 settlement with Merrell and Powell including amounts for Plaintiff's past medical care and lost wages, Plaintiff has not reimbursed the Plan, as required by its terms, PX1 at pp.22-23, for the more than $450,000 in Plan benefits paid to him.   RR3 p.94,ll.3-14, p.95,l.19 – p.96,l.10, p.126,l.5 – p.127,l.6, p.138,l.18 – p.140,l.10.

56.     On April 24, 2015, Plaintiff filed in the Trial Court Plaintiff's Motion To Lift Stay Of Proceedings And Dismiss Stripes LLC's Order For Arbitration ("**Motion To Lift Stay**").  20CR4095-4208.

**The DSI Arbitration**

57.     On April 27, 2015, DSI sent a strike list to Mr. Gonzales and Sarles for the selection of the arbitrator in the DSI arbitration ("**DSI Arbitration**") that Mr. Gonzales had demanded on March 6 and 19, 2015.  20CR4225.

58.     On April 30, 2015, Plaintiff filed in the Trial Court Plaintiff's Application For Temporary Restraining Order For Emergency Stay Of Arbitration, requesting the Trial Court to enjoin DSI from proceeding with the selection of the arbitrator for the DSI Arbitration, and asserting that Plaintiff would suffer irreparable harm if the arbitrator-selection process was not halted.  20CR4217-4234.

59.     Rather than setting that Application for hearing before the Trial Court, Plaintiff's counsel submitted its strike list to DSI, resulting in the appointment on May 4, 2015 of Plaintiff's first choice, Robert "Bob" Black in Beaumont, a former

President of the State Bar ("**Arbitrator Black**"). CR4756-4760; RR3 p.20,ll.9-17; *see* RR3 p.30,l.24 – p.31,l.11. Plaintiff has never filed any objection to the appointment of Arbitrator Black. PX4d; CR3 p.20,ll18-24; *see* CR3 p.31,ll.12-18.

60. On April 30, 2015, Stripes filed in the DSI Arbitration Respondents' Original Answer And Counterclaims, with Stripes asserting a counterclaim against Plaintiff for breach of the Election And Arbitration Agreement and the Plan asserting a counterclaim for recovery of its more than $450,000 that Plaintiff's counsel failed to remit to the Plan after Plaintiff's $6 million settlement with Merrell and Powell. 20CR4613-4621; DX10; RR3 p.136,l.25 – p.137,l.6. The Plan non-suited its Plea in Intervention in the Trial Court the same day. 20CR4237-4238.

61. On May 5, 2015, the Respondents in the DSI Arbitration filed Respondents' Motion To Determine The Enforceability Of The Parties' Election And Arbitration Agreement, 20CR4622-4629, and on May 8, 2015, Arbitrator Black set a briefing schedule on it. PX4.

**Plaintiff's Applications to Enjoin the DSI Arbitration**

62. On May 8, 2015, Plaintiff filed in the Trial Court Plaintiff's First Amended Application For *Ex Parte* Temporary Restraining Order For Emergency Stay Of Arbitration And Application For Temporary Injunction, 20CR4605-4633, which Nueces County Court at Law No. 4 Judge Mark Woerner granted on May 8, 2015. 20CR4603-4604. Three days later, on May 11, 2015, Plaintiff filed the

verification by attorney Todd Hunter, Jr. to that First Amended Application, which had already been granted on May 8, 2015. 20CR4634.

63. On May 19, 2015, the Trial Court extended the Temporary Restraining Order, 20CR5157-5158, without any motion filed by Plaintiff and without any showing of good cause or consent by Stripes as required by Rule 680. RR2 pp.4-9.

64. At midnight on Memorial Day, May 25, 2015, Plaintiff filed Plaintiff's Verified Fifth Amended Petition. 21CR5174-5191. Early the next morning, Plaintiff filed Plaintiff's Reply To Defendant Stripes LLC's Response To Plaintiff's Application For Temporary Injunction. 21CR5192-5608.

65. At 9:00 a.m. on May 26, 2015, 20CR5157, the Trial Court started a temporary injunction hearing that concluded on May 27, 2015. RR3; RR4.

66. The Trial Court's May 27, 2015 Order Granting Plaintiff's Request For Temporary Injunction recites that there "is evidence that harm is imminent to Plaintiff, and if the Court does not issue the temporary injunction, Plaintiff will be irreparably injured because Plaintiff will be subject to arbitration proceedings, motions, and hearings that will deprive him of his right to have this Court decide arbitrability and his right to a jury trial." 21CR5611-5612.

**Stripes' Filings in this Court**

67. On May 28, 2015, Stripes filed under Section 51.016 of the Civil Practice and Remedies Code its notice of appeal of the May 27, 2015 temporary

injunction order.  21CR5720-5721.

68.     On May 30, 2015, Stripes moved this Court to prevent the Trial Court from proceeding with a June 4, 2015 hearing on Plaintiff's Motion To Lift Stay, which this Court granted on June 1, 2015.  SCR10-11.

69.     On June 4, 2015, this Court ordered the June 1 stay lifted, SCR12-13, and on June 5 declined to reconsider its order.  Because the Trial Court had not conducted the hearing on Plaintiff's Motion To Lift Stay on June 4 and the May 27 temporary injunction order stated that it expired on June 4, Plaintiff on June 4 filed an Expedited Motion To Modify Temporary Injunction Order, SCR4-13, that Visiting Judge Martha Huerta granted over Stripes' objections on June 8, 2015, SCR18-20, SRR pp.1-11, extending the temporary injunction order until July 28, 2014, SCR19, when Plaintiff's Motion To Lift Stay is now set for hearing in the Trial Court.  SCR16-17.

70.     On June 8, 2015, Stripes filed a notice of appeal of the June 8, 2015 temporary injunction order.  SCR21-22.

## SUMMARY OF ARGUMENT

Stripes' October 8, 2014 filing of its Original Answer And Application For Order For Arbitration ("**Application**") under Texas Civil Practice and Remedies Code §171.025 mandatorily stayed this lawsuit as to Stripes. The Trial Court's December 2, 2014 Agreed Stay Order formalized the automatic, mandatory, statutory stay. Pleadings and motions filed during the pendency of a stay violate it and are void. While a mandatory stay is in effect, a court has no discretion to refuse to recognize it, and all court actions in derogation of the stay are also void. Here, rather than purporting to lift the stay, the May 27 and June 8, 2015 temporary injunction orders acknowledge the continued efficacy of the stay by enjoining the DSI Arbitration only until Plaintiff's Motion To Lift Stay is heard by the Trial Court, set for July 28, 2015. The Trial Court's orders are void and should be vacated.

Texas Rule of Civil Procedure 682 requires that a plaintiff verify his application for injunctive relief and show that he has personal knowledge of the truth of its allegations. Plaintiff's May 8, 2015 First Amended Application For *Ex Parte* Temporary Restraining Order For Emergency Stay Of Arbitration And Application For Temporary Injunction ("**First Amended Application**") was verified only by one of Plaintiff's attorneys, with no personal knowledge of Plaintiff's ability to read English in December of 2012 when he undisputedly signed the Election And Arbitration Agreement. Although verified by Plaintiff himself, Plaintiff's Verified

- 20 -

Fifth Amended Petition was filed and served just hours before the temporary injunction hearing in violation of Rule 21. Without a properly verified application before it, the Trial Court abused its discretion in entering a temporary injunction.

Neither Plaintiff's First Amended Application nor his Verified Fifth Amended Petition pleads a cause of action for injunctive relief against Stripes. Plaintiff's only purported legal grounds for injunctive relief were (1) procedural unconscionability, (2) fraudulent inducement, and (3) concealment and misrepresentation. First, Stripes explained before the temporary injunction hearing began that unconscionability is a defense, not a cause of action, a point recently reiterated in *Royston, Rayzor, Vickery & Williams, LLP v. Lopez*, 2015 Tex. LEXIS 622 at 9 (Tex. June 26, 2015). Second, despite Rule 683's requirement that a temporary injunction set forth a "detailed explanation of the reason for the injunction's issuance," the Trial Court made no finding or mention of fraudulent inducement, concealment or misrepresentation. Third, although Plaintiff's brother Sammy Mrayyan brought the Election And Arbitration Agreement to Plaintiff to sign, Plaintiff expressly admitted in his affidavit that "Sammy Mrayyan did not explain the meaning of the arbitration agreement to me before I signed the Election And Arbitration Agreement. Sammy Mrayyan did not explain any of the contents of the Election And Arbitration Agreement to me before I signed it." The evidence shows that no one from Stripes told Plaintiff anything about the Election And Arbitration Agreement that was false,

and there was no evidence that Plaintiff relied on anything said to him. In the absence of pleading and proof of a cause of action for injunctive relief, the temporary injunction order must be reversed.

The purpose of a temporary injunction is to preserve the status quo, "the last, actual, peaceable, non-contested status which preceded the pending controversy." *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004). A temporary injunction that destroys rather than preserves the status quo is an abuse of discretion and must be dissolved. *Ballenger v. Ballenger*, 668 S.W.2d 467, 469-70 (Tex. App.—Corpus Christi 1984, writ dism'd w.o.j.). As detailed in Paragraphs 38-42 of the Statement Of Facts above, counsel for the Parties agreed to the Agreed Stay Order and, in lieu of a hearing on Stripes' Application, Plaintiff's counsel had it entered by the Trial Court on December 2, 2014, staying all further proceedings in this lawsuit against Stripes. Plaintiff's counsel then voluntarily, knowingly and unconditionally initiated the DSI Arbitration on March 6, 2015, without asserting any challenge or defense to the DSI arbitrator's jurisdiction. As a result, "the last, actual, peaceable, non-contested status which preceded the pending controversy," was where all proceedings against Stripes in this lawsuit were stayed and Plaintiff and Stripes were arbitrating their claims and defense in the DSI Arbitration before Arbitrator Black. The Trial Court's temporary injunction prohibiting the DSI Arbitration from going forward destroys rather than preserves the status quo and must be vacated.

Plaintiff will not be irreparably harmed by having Arbitrator Black in the DSI Arbitration decide whether the Election And Arbitration Agreement is enforceable. When "clear and unmistakable evidence" exists that the parties intended for an arbitrator to decide "gateway" questions of arbitrability like enforceability and validity, such matters are for determination by the arbitrator, not the courts. The Election And Arbitration Agreement expressly covers "any and all" "**claims challenging the existence, validity or enforceability of this Agreement (in whole or in part) or challenging the applicability of this Agreement to a particular dispute or claim.**" PX2 at p.2 (emphasis in original). Such "delegation provisions" are "clear and unmistakable evidence" of the intent to arbitrate enforceability and validity and are fully enforceable under the FAA. *See Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010). In addition, Texas courts hold that when parties explicitly incorporate rules that empower an arbitrator to decide such issues, the incorporation is also "clear and unmistakable evidence" of the intent to delegate such issues to the arbitrator. Plaintiff and Stripes undisputedly agreed to arbitrate under the DSI Rules, DSI Rule 5(a) grants Arbitrator Black the authority to rule on any objections to the enforceability of the Election And Arbitration Agreement, and under DSI Rule 5(c), Plaintiff has waived any challenge to Arbitrator Black's jurisdiction. Having agreed to arbitrate arbitrability disputes, Plaintiff will not be deprived of a jury right or access to the courts, because he already waived them. *D.*

*Wilson Constr. Co. v. McAllen Ind. Sch. Dist.*, 848 S.W.2d 226, 231 (Tex. App.—Corpus Christi 1992, writ dism'd w.o.j.); *In re Burton, McCumber & Cortez, LLP*, 115 S.W.3d 235, 237 (Tex. App.—Corpus Christi 2003, orig. proceeding). The temporary injunction cannot preserve rights that Plaintiff already waived.

Plaintiff also failed to establish a probable right to the injunctive relief sought. As shown, Plaintiff has no right to have the courts decide arbitrability disputes. Plaintiff also has no right to a jury trial simply because he asserts that he did not understand the Election And Arbitration Agreement when he undisputedly signed it. In the absence of fraud, Texas law holds that one who signs a contract knows and understands its contents and is bound by its terms, *Lopez*, 2015 Tex. LEXIS 622 at *8, that illiteracy or the inability to read English does not relieve him of his agreement, that if he is unable to read the contract, he must have it read to him, that an arbitration agreement cannot be avoided by his assertion that he did not subjectively understand it, and that the other party has no obligation to explain the contract to him because he is illiterate. Moreover, by knowingly accepting and retaining over $450,000 in Plan benefits paid in reliance on the Election And Arbitration Agreement, much of it paid while Plaintiff was represented by counsel, Plaintiff has ratified it and is estopped to deny its enforceability. Regardless of the Election And Arbitration Agreement, the Agreed Stay Order, as a Rule 11 agreement, independently obligates Plaintiff to arbitrate his claims against Stripes.

The Plan, as intervenor, did not waive Stripes' arbitration rights. The Plan's questioning of Dr. Snook was in furtherance of the Plan's interest in achieving a settlement of Plaintiff's claims against Merrell and Powell, which it accomplished. The temporary injunction orders do not find waiver, and Plaintiff failed to bear his heavy burden of showing an intentional, unequivocal waiver of Stripes' arbitration rights.

**ARGUMENT**

## I.  PLAINTIFF'S APPLICATIONS FOR INJUNCTIVE RELIEF AND THE ORDERS GRANTING IT ARE ALL VOID.

On October 8, 2014, when Stripes filed or "made" its Original Answer And Application For Order For Arbitration ("**Application**") under Texas Civil Practice and Remedies Code §171.025, this lawsuit was mandatorily stayed as to Stripes. *See In re Nationwide Credit, Inc.*, 2009 Tex. App. LEXIS 2243 at 12 (Tex. App.—Corpus Christi 2009, orig. proceeding)(mem. op.)('the trial court is compelled by statute to stay any proceeding that involves 'an issue subject to arbitration' if a party seeks an order to arbitrate"); *In re Pediatrix Medical Services, Inc.*, 2005 Tex. App. LEXIS 5861 at 2 (Tex. App.—Dallas 2005, orig. proceeding)(mem. op.)("The civil practice and remedies code provides that the trial court shall stay a proceeding that involves an issue subject to arbitration if an application for an arbitration order is made.").  The Trial Court's December 2, 2014 Agreed Stay Order explains that it is formalizing the automatic, mandatory stay imposed by Section 171.025.  1CR570.

A pleading or motion filed during the pendency of a stay violates it and is void.  *See, e.g., In re Helena Chem. Co.*, 286 S.W.3d 492, 496-97 (Tex. App.—Corpus Christi 2009, orig. proceeding)(collecting cases); *Nautical Landings Marina, Inc. v. First Nat'l Bank*, 791 S.W.2d 293, 296 (Tex. App.—Corpus Christi 1990, writ denied)(collecting cases).  While a mandatory stay is in effect, a court has no discretion to refuse to recognize it, and all court actions in derogation of the stay are

also void. *In re Consolidated Freightways*, 75 S.W.3d 147, 149 (Tex. App.—San Antonio 2002, orig. proceeding)(Insurance Code stay); *Star-Tel, Inc. v. Nacogdoches Telecommunications, Inc.*, 755 S.W.2d 146, 150 (Tex. App.— Houston [1st Dist.] 1988, no writ)(bankruptcy stay); *see also* *Hood v. Amarillo Nat'l Bank*, 815 S.W.2d 545, 547 (Tex. 1991)(recognizing that a trial court cannot enter a judgment in violation of a bankruptcy stay).

Here, the temporary injunction orders do not lift the stay. *See* 21CR5615-5616; SCR18-20. Instead, those orders expressly acknowledge the continued efficacy of the stay by purporting to enjoin the DSI Arbitration only until Plaintiff's Motion To Lift Stay—the same stay—is heard by the Trial Court, now set for July 28, 2015. *See* SCR18-19; SCR16-17; 21CR5615-5616; 20CR4210-4211. As a result of the stay, all of Plaintiff's applications for temporary injunctive relief against Stripes, as well as the motion to extend the temporary injunction order, SRR p.7,l.19 – p.8,l.4, were void when filed without first having the stay lifted.

The Trial Court's void temporary injunction orders granting and extending injunctive relief on Plaintiff's void pleadings should be vacated by this Court without further consideration or delay. *See Consolidated Freightways*, 75 S.W.3d at 154 (granting mandamus and vacating all trial court orders issued during Insurance Code stay).

## II. IN ADDITION TO BEING VOID, PLAINTIFF'S FIRST AMENDED APPLICATION WAS ALSO NOT PROPERLY VERIFIED, AND PLAINTIFF'S VERIFIED FIFTH AMENDED PETITION WAS NOT <u>PROPERLY BEFORE THE TRIAL COURT.</u>

Texas Rule of Civil Procedure 682 provides that "[n]o writ of injunction shall be granted unless the applicant therefor shall present his petition to the judge ***verified by <u>his</u> affidavit*** and containing a plain and intelligible statement of the grounds for such relief." (emphasis added). Rule 682's requirements are mandatory. *Williams v. Bagley*, 875 S.W.2d 808, 810 (Tex. App.—Beaumont 1994, no writ). The phrase "verified by his affidavit" means "proved to be true or correct." *In re MetroPCS Communs., Inc.*, 391 S.W.3d 329, 337 (Tex. App.—Dallas 2013, orig. proceeding) (citing *City of Arlington v. Dallas-Fort Worth Safety Coach Co.*, 270 S.W. 1094, 1095 (Tex. Civ. App.—Fort Worth 1925, no writ)). "[T]he affidavit must show to have been made on the personal knowledge of the affiant as to the truth of the allegations verified." *Id.* The application "must plead affirmatively the necessary facts and not legal conclusions" and "must be direct, certain and particular." *Texas State Board of Medical Examiners v. McKinney*, 315 S.W.2d 387, 390 (Tex. Civ. App.—Waco 1958, no writ). Although Texas Rule of Civil Procedure 14 permits an attorney to verify pleadings, an attorney may only verify a pleading "where he has knowledge of the facts," and Rule 14 does not authorize an attorney "to verify based merely on his status as counsel." *Cantu v. Holiday Inns*, 910 S.W.2d 113, 116 (Tex. App.—Corpus Christi 1995, writ denied).

Plaintiff's May 8, 2015 First Amended Application For *Ex Parte* Temporary Restraining Order For Emergency Stay Of Arbitration And Application For Temporary Injunction, 20CR4605-4633 ("**First Amended Application**"), was not "verified by his affidavit." Instead, three days after the temporary restraining order was entered by Judge Woerner on May 8, 2015, Plaintiff filed on May 11, 2015 the verification by attorney Todd A. Hunter, Jr. of the already-granted First Amended Application. 20CR4634.

In addition to this after-the-fact verification problem for the May 8 temporary restraining order, the May 11 verification also cannot support the May 27 and June 8 temporary injunction orders, because the verification was not made by Plaintiff, but by his attorney, Mr. Hunter. The verification is defective because it does not and cannot demonstrate how it was "made on the personal knowledge of the affiant." The crux of Plaintiff's First Amended Application, and the only purported basis for the injunction entered on May 27 and extended on June 8, are the allegations in Paragraph 7. Paragraph 7's allegations cannot possibly be verified by anyone other than Plaintiff: "While Plaintiff can read, write, and speak Arabic, his ability to read, write, and speak English is extremely limited, and with regard to reading in English, his ability is practically non-existent." 20CR4606. Paragraph 7 further asserts that "Plaintiff is unable to read the English language, and must have someone translate anything written in said language to Arabic in order to comprehend and understand

what is written," 20CR4606, and it further asserts that "[t]his is true now ***and was true in December 2012, when he was given the Arbitration Agreement and directed to sign it.***" 20CR4607 (emphasis added).

Lawyer Hunter's verification fails to explain how he has personal knowledge of Plaintiff's English skills back in December of 201***2***, when Plaintiff signed the Election And Arbitration Agreement. Mr. Hunter did not meet and begin representing Plaintiff until sometime after September 25, 201***4***. 1CR516-517. Moreover, even Plaintiff's retained neuropsychologist expert, Dr. Pollock, testified that, after conducting hours of interviews and testing on Plaintiff in January of 2015, "I do***n't*** have an opinion about whether [Plaintiff] understood [the Election And Arbitration Agreement] or not at the time he signed it" in December of 2012. "That's something that I don't have any knowledge about his functioning at that point in time." RR3 p.183,ll.21-25 (emphasis added). When Plaintiff's own counsel inquired during the temporary injunction hearing whether Dr. Pollock had an opinion about whether his report would be consistent with Plaintiff allegedly having had difficulty understanding at Mississippi State University, Dr. Pollock answered that "I ca***n't*** say that it would be consistent with my report," and that there was nothing "that I did with [Plaintiff] that would indicate that he was having trouble with English; but at the same time, sometimes patients don't tell you the – the whole picture. So I don't know whether his English was proficient enough to be

understanding college material or not, **but I certainly know that he was functioning at a higher cognitive level before this accident**" on March 27, 2013. RR3 at p.187,l.16 – p.188,l.6 (emphasis added). Mr. Hunter's verification is fatally defective, as Stripes pointed out on May 18, 2015, well before the temporary injunction hearing began. 20CR4640.

In a last-minute effort to fix this fatal defect, Plaintiff's Verified Fifth Amended Petition was verified by Plaintiff himself. 21CR5182. However, Plaintiff's Verified Fifth Amended Petition was not filed until almost midnight on Memorial Day, May 25, just hours before the temporary injunction hearing began, and in violation of the December 2, 2014 Agreed Stay Order, after the agreed scheduling order's deadline for amending pleadings, and in violation of Texas Rule of Civil Procedure 21. Rule 21 requires every pleading, plea, motion or application for an order to be filed and served at least three days before a hearing on it, unless otherwise provided by the Rules or shortened by the court. *See Approximately $1,589.00 v. State*, 230 S.W.3d 871, 873-74 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Plaintiff's untimely Verified Fifth Amended Petition cannot support the Trial Court's temporary injunction.

The Trial Court's temporary injunction should be vacated by this Court without further consideration or delay.

## III. **PLAINTIFF FAILED TO PLEAD AND PROVE A CAUSE OF ACTION.**

Regardless whether Plaintiff's applications for temporary injunction are void, improperly verified and untimely filed, they fail to establish the elements necessary for the issuance of a temporary injunction. "A temporary injunction is an extraordinary remedy and does not issue as a matter of right." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002)(*cited in Plaintiff's applications*). As a result, to obtain a temporary injunction under Texas law, an applicant "must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim."

Both Plaintiff's May 8 First Amended Application and Plaintiff's May 25 Verified Fifth Amended Petition failed to affirmatively plead the necessary facts to set forth ***any*** cause of action against Stripes for injunctive relief. Plaintiff's First Amended Application did not even purport to set forth a new cause of action against Stripes, <u>see</u> 20CR4605-4610, and it only made a cursory statement in Paragraph 18 that the Election And Arbitration Agreement is unconscionable. 20CR4610. However, as Stripes pointed out in its Response on May 18, 2015—well in advance of the temporary injunction hearing—unconscionability is a defense to an arbitration agreement, not a cause of action. 20CR4641 (citing *In re FirstMerit Bank, N.A.*, 52

- 32 -

S.W.3d 749, 757 (Tex. 2001)("plaintiffs are free to pursue their unconscionability defense in the arbitral forum")).

Plaintiff's untimely Verified Fifth Amended Petition failed to plead a cause of action for injunctive relief against Stripes. Even if considered, it sets forth in Section V, entitled "Causes Of Action Against Stripes, LLC," only two causes of action: negligence and gross negligence. 21CR5176-5178. Its Prayer, Section XI, requests only damages and pre-judgment and post-judgment interest. 21CR5180. Nowhere does it request the entry of an injunction against Stripes or a stay of the DSI Arbitration. *See* 21CR5174-5182. Although Section VIII, entitled "Plaintiff Not Subject To Arbitration," does not seek an injunction against Stripes or the DSI Arbitration, it at least mentions a couple of causes of action in Paragraph 20:

> Plaintiff contends that the arbitration provisions of the agreements upon which Stripes relies are procedurally unconscionable, were fraudulently induced, and were procured through acts of concealment and misrepresentation, the Arbitration Agreement is invalid, and therefore this Court should deny Defendant's Application for Order for Arbitration and proceed to set this matter for trial and issue an appropriate scheduling order.

21CR5179. Even Paragraph 20, however, does not request injunctive relief, it wholly fails to "plead affirmatively the necessary facts and not legal conclusions," and it is in no way "direct, certain and particular," as required under Rule 682. *Texas State Board of Medical Examiners v. McKinney*, 315 S.W.2d 387, 390 (Tex. Civ. App.—Waco 1958, no writ).

Moreover, even assuming *arguendo* that Paragraph 20 somehow pleads (which Stripes denies) (1) procedural unconscionability, (2) fraudulent inducement, and (3) concealment and misrepresentation, for at least three reasons such allegations cannot satisfy the first requirement of *Butnaru v. Ford Motor Co.*—pleading and proof of a cause of action—in order to support the temporary injunction against Stripes and the DSI Arbitration.

First, as shown above, the Texas Supreme Court has made clear that unconscionability is a defense, not a cause of action. *In re FirstMerit Bank,* 52 S.W.3d at 757. Just days ago, the Texas Supreme Court again reiterated that "parties asserting **defenses** to arbitration clauses have the burden to prove the **defenses**— including unconscionability." *Royston, Rayzor, Vickery & Williams, LLP v. Lopez*, 2015 Tex. LEXIS 622 at 9 (Tex. June 26, 2015)(emphasis added).

Second, the Trial Court made no finding of fraudulent inducement, concealment or misrepresentation. The temporary injunction orders of May 27 and June 8 make no such finding. 21CR5615-5616; SCR18-20. Texas Rule of Civil Procedure 683 requires that a temporary injunction set forth a "detailed explanation of the reason for the injunction's issuance." *Adust Video v. Nueces County*, 996 S.W.2d 245, 249 (Tex. App.—Corpus Christi, 1999, no pet.). "The explanation must include specific reasons and not merely conclusory statements." *Law Funder, LLC v. Law Offices of Douglas A. Allison*, 2014 Tex. App. LEXIS 2504, 2014 WL 895512

(Tex. App.—Corpus Christi March 6, 2014, no pet.)(mem. op.)(citing *Kotz v. Imperial Capital Bank*, 319 S.W.3d 54, 56-57 (Tex. App.—San Antonio 2010, no pet.)). Despite Stripes' objections, the temporary injunction orders of May 27 and June 8 do not set forth fraudulent inducement, concealment or misrepresentation as reasons for enjoining the DSI Arbitration. *See* 21CR5615-5616; SCR18-20; SRR p.8,l.16 – p.9.,l.20.

Third, both temporary injunction orders are silent about fraudulent inducement, concealment and misrepresentation for the simple reason that Plaintiff presented no evidence of any of them. Plaintiff testified at the temporary injunction hearing that he does not remember ever seeing the Election And Arbitration Agreement, does not remember anyone from Stripes ever explaining it to him, and does not remember anyone at Stripes ever discussing it with him. RR3 p.160,ll.3-11. When Plaintiff signed the Election And Arbitration Agreement he did not know anything about it. RR4 p.9,ll.3-9. Sammy Mrayyan brought the Election And Arbitration Agreement to Plaintiff and told him to sign. RR3 p.161,ll.9-13. However, as Plaintiff expressly admitted in his affidavit, "Sammy Mrayyan did not explain the meaning of the arbitration agreement to [Plaintiff] before [Plaintiff] signed the Election And Arbitration Agreement. Sammy Mrayyan did not explain any of the contents of the Election And Arbitration Agreement to [Plaintiff] before [Plaintiff] signed it." RR3 p.256,ll.3-16; DX24 at ¶6. The Trial Court determined

that these two quoted statements from Plaintiff's affidavit are binding on him, RR3 p.258,ll.20-21, and Plaintiff's counsel has stipulated that not just Sammy Mrayyan, but no one explained any part of the Election And Arbitration Agreement to Plaintiff, and that no one translated any part of it to him.  RR4 p.10,ll.17-20.

Plaintiff believed that if he did not sign the Election And Arbitration Agreement, he could not work for Stripes.  RR3 p.161,ll.19-23.  This is not a misrepresentation or concealment by Stripes, because it is true—Plaintiff could not work for Stripes if he did not sign the Election And Arbitration Agreement.   Stripes employees are required to ***sign*** the Election And Arbitration Agreement, but its signature page gives the employee the option either to check a box and ***accept*** its terms or to check a box and ***reject*** its terms.  RR3 p.82,ll.3-12.  Accepting the Election And Arbitration Agreement's terms accepts participation in the Plan, eligibility for benefits and arbitration, while rejecting its terms rejects Plan participation, benefits and arbitration.  PX1 at p.1; PX2 at pp.1-2; RR3 p.84,ll.1-13. Its signature page provides in part:

**CHECK ONLY <u>ONE</u> OF THE FOLLOWING BOXES:**

◻ I <u>agree</u> to the terms of this Agreement. **OR** ◻ I <u>reject</u> the terms of this Agreement.

PX2 at p.4. Because the Election And Arbitration Agreement is optional for an employee, accepting its terms is <u>not</u> a condition of employment at Stripes.  RR3 p.83,l.2 – p.84,l.13.  In fact, any Stripes employee who accepts the terms of the

Election And Arbitration Agreement has 5 days after accepting it to revoke his or her acceptance. PX2 at p.3; RR3 at p.135,l.22 – p.136,l.14.

There is simply no evidence that Stripes misrepresented or concealed anything from Plaintiff about the Election And Arbitration Agreement before he signed it, checked the accept box, printed his name, dated his signature, and had his brother sign it as his witness. In fact, the only evidence is to the contrary and shows that no one from Stripes told Plaintiff anything about the Election And Arbitration Agreement that was false, and there was no evidence that Plaintiff relied on anything said to him. *In re Border Steel, Inc.*, 229 S.W.3d 825, 834-35 (Tex. App.—El Paso 2007, orig. proceeding)("The record does not show that a material misrepresentation was made to Juarez regarding his rights under the Plan. There is no record that [Sammy Mrayyan] made any statement to [Plaintiff] regarding the plan. Even assuming that [Sammy Mrayyan] misunderstood what arbitration was and did not know that an employee gave up his right to a jury trial by agreeing to arbitrate disputes with [Stripes], there is no record that [Plaintiff] relied on any statement made by [Sammy Mrayyan] when [Plaintiff] agreed to the Plan. Therefore, [Plaintiff] did not show that the Agreement was obtained by fraud, and the Arbitration Agreement is not unenforceable on that ground.").

In sum, Plaintiff failed to plead and prove a cause of action against Stripes.

## IV. **THE TEMPORARY INJUNCTION DESTROYED THE STATUS QUO.**

The purpose of a temporary injunction is to preserve the status quo. *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004). Indeed, Plaintiff's First Amended Application purports to request maintenance of "the status quo of the parties." 20CR4610. However, the Supreme Court defines "status quo" as "the last, actual, peaceable, non-contested status which preceded the pending controversy." *In re Newton*, 146 S.W.3d at 651. A temporary injunction that destroys rather than preserves the status quo is an abuse of discretion and must be dissolved. *Ballenger v. Ballenger*, 668 S.W.2d 467, 469-70 (Tex. App.—Corpus Christi 1984, writ dism'd w.o.j.).

As detailed in Paragraphs 38-42 of the Statement Of Facts above, in October and November of 2014, Sarles and Mr. Gonzales discussed the Election And Arbitration Agreement and staying all of the claims against Stripes, and they agreed to the Agreed Stay Order, 1CR570-571; DX2; RR3 p.99,l.20 – p.101,l.15, agreed to stay the proceedings in this lawsuit against Stripes, agreed to the language of the Agreed Stay Order, and agreed to resolve any disputes between Plaintiff and Stripes in binding arbitration before DSI. RR3 p.104,ll.5-22, p.105,ll.15-19. Mr. Gonzales never objected to the enforceability of the Election And Arbitration Agreement and never asserted any defense to its enforceability in his discussions with Sarles during the negotiations that resulted in the Agreed Stay Order. RR3 p.106,l.16 – p.107,l.3.

The Agreed Stay Order states that it is "Agreed As To Form Only," not merely "Approved As To Form Only."  1CR571; DX2 at p.2; RR3 p.107,ll.8-14.  Mr. Gonzales' partner signed the Agreed Stay Order for Plaintiff and had it filed with and signed by the Trial Court.  1CR571; DX2 at p.2; RR3 p.107,ll.15-21.  Regarding the Agreed Stay Order, Mr. Gonzales admitted during his opening statement at the temporary injunction hearing that "we did not contest it at that time."  RR3 p.17,ll.15-16.

The Agreed Stay Order was signed by the Trial Court on December 2, 2014.  1CR570; DX2 at p.1.  It provides:

> Defendant Stripes LLC having filed with its Original Answer an Application for Order for Arbitration requesting a formal written order enforcing the automatic stay imposed by Section 171.025(a) of the Civil Practice and Remedies Code on any further proceedings against Stripes LLC in this lawsuit, the Court is of the opinion that the statutory stay should be formalized by this Order.  It is, therefore,
>
> ORDERED that Plaintiff Hazem Mrayyan's claims and causes of action and all further proceedings against Defendant Stripes LLC be, and they hereby are, stayed pending resolution of these two parties' claims, causes of action and defenses in binding arbitration before Dispute Solutions, Inc. ("DSI") in accordance with their Election And Arbitration Agreement and the DSI Arbitration Rules.

The Agreed Stay Order was not prepared to memorialize any oral ruling by the Trial Court on Stripes' Application.  It does not mention any hearing, argument or evidence being presented to the Trial Court, because no hearing ever took place on Stripes' Application.  No hearing ever took place, because Mr. Gonzales and Sarles agreed to the Agreed Stay Order and submitted it to the Trial Court for entry

- 39 -

without any need for a hearing on Stripes' Application. Sarles considered the Agreed Stay Order an agreed order or at least a Rule 11 agreement, and Stripes relied on the Agreed Stay Order by not setting its Application for hearing before the Trial Court and by not participating in discovery. RR3 p.107,l.4 – p.108,l.13,

Under the Agreed Stay Order and *In re Newton*, "the last, actual, peaceable, non-contested status which preceded the pending controversy" was where:

(1) all of Plaintiff's claims and all proceedings against Stripes in the Trial Court were stayed until the resolution of Plaintiff's and Stripes' claims, causes of action and defenses in binding arbitration before DSI in accordance with those parties' Election And Arbitration Agreement and the DSI Rules, and

(2) Plaintiff was pursuing claims for damages, and only claims for damages, against Stripes in the DSI Arbitration before Arbitrator Black.

Before May 8, 2015, when Plaintiff filed Plaintiff's First Amended Application seeking to enjoin Stripes from proceeding with the DSI Arbitration, 20CR4605-4633, the "last, actual, peaceable, non-contested status which preceded the pending controversy" was Plaintiff's claims against Stripes in the Trial Court stayed and Plaintiff and Stripes arbitrating before Arbitrator Black in the DSI Arbitration.

Plaintiff did not, and cannot, establish the status quo as some state of affairs before the May 8 filing of Plaintiff's First Amended Application. On April 30, 2015, Plaintiff had filed in the Trial Court his original Application For Temporary Restraining Order For Emergency Stay Of Arbitration, requesting the Trial Court to stay DSI from proceeding with the selection of the arbitrator for the DSI Arbitration

- 40 -

that Plaintiff had voluntarily initiated on March 6, 2015. 20CR4217-4234. That original Application asserted that Plaintiff would suffer irreparable harm if the arbitrator-selection process was not halted, 20CR4220, and it stated that an emergency stay was necessary to maintain the status quo. 20CR4221. However, rather than setting that Application for hearing before the Trial Court, Plaintiff's counsel submitted its strike list to DSI, resulting in the appointment of Plaintiff's first choice, Arbitrator Black. CR4756-4760; RR3 p.20,ll.9-17; _see_ RR3 p.30,l.24 – p.31,l.11. Plaintiff never filed any objection to the appointment of Arbitrator Black in the DSI Arbitration. PX4d; CR3 p.20,ll18-24; _see_ CR3 p.31,ll.12-18. The "last, actual, peaceable, non-contested status which preceded the pending controversy" was thus Plaintiff and Stripes arbitrating in the DSI Arbitration before their selected arbitrator, Arbitrator Black, while this lawsuit was stayed by the Agreed Stay Order.

There is no dispute that (1) Plaintiff signed the Election And Arbitration Agreement on December 14, 2012, PX2 at p.4; RR3 p.159,ll.8-23; RR3 p.14,ll.23-24, (2) his counsel agreed to the form of, and did not contest the entry of, the Agreed Stay Order on December 2, 2014, RR3 p.104,ll.5-22, p.105,ll.15-19; RR3 p.17,ll.15-16, (3) his counsel voluntarily, unconditionally and without reservation initiated the DSI Arbitration on March 6 and 19, 2015 with full knowledge of Plaintiff's limited English skills, RR3 p.109,l.9 – p.111,l.21, p.113,ll.5-12, and (4) Plaintiff filed no motion or document with the Trial Court or DSI challenging the enforceability of

the Election And Arbitration Agreement or DSI's jurisdiction.  RR3 p.115,l.24 – p.116,l.21.

It is also undisputed that the March 6, 2015 Demand for Arbitration sought no relief other than damages, was unconditional, contained no reservation of Plaintiff's rights, asserted no objection or defense to the DSI arbitrator's jurisdiction, and said nothing about being filed to preserve the statute of limitations.  DX4; RR3 p.112,l.6 – p.113,l.12.  Similarly, Plaintiff's March 19, 2015 electronically-filed Demand for Arbitration was unconditional, contained no reservation of Plaintiff's rights, asserted no objection or defense to the arbitrator's jurisdiction, said nothing about being filed to preserve the statute of limitations, and made no contention that Plaintiff is not bound by the Election And Arbitration Agreement because he could not understand English, and Mr. Hunter made no such assertions in his conversation with Sarles prior to its March 19th filing with DSI.  DX5; RR3 p.114,l.6 – p.115,l.23.

Contrary to the arguments in Plaintiff's untimely Reply To Defendant Stripes LLC's Response To Plaintiff's Application For Temporary Injunction, 21CR5192-5608, Plaintiff and Stripes arbitrating before Arbitrator Black was not a continuing violation of the law, nor was it deprivation of Plaintiff's property without due process of law.  21CR5196-5197 (citing *8100 N. Freeway Ltd. v. City of Houston*, 329 S.W.3d 858 (Tex. App.—Houston [14th Dist.] 2010, no pet.)(adult arcade operating without permit), and *Gen. Tel. Co. v. City of Wellington*, 294 S.W.2d 385

(Tex. 1956)(rates set by city for telephone exchange company prevented a fair return on the company's property in violation of constitutional guarantees)). Plaintiff, Stripes, DSI and Arbitrator Black were not violating the law by proceeding with the DSI Arbitration. Plaintiff arbitrating in the DSI Arbitration that his counsel voluntarily, knowingly and unconditionally initiated—twice—was not deprivation of Plaintiff's rights without due process; rather it was simply Plaintiff honoring his contractual obligations to arbitrate set forth in the Election And Arbitration Agreement and the Agreed Stay Order that altered his rights by contract.

The Trial Court's temporary injunction destroyed rather than preserved the status quo and must be dissolved. *Ballenger v. Ballenger*, 668 S.W.2d at 469-70.

## V.  PLAINTIFF FAILED TO ESTABLISH IMMINENT, IRREPARABLE HARM.

Plaintiff also failed to establish another necessary element for the issuance of any temporary injunction, "a probable, imminent, and irreparable injury in the interim." *Butnaru*, 84 S.W.3d at 204. Paragraph 1 of both the May 27 temporary injunction order and the June 8 temporary injunction order states that "Plaintiff will be irreparably injured because Plaintiff will be subject to arbitration proceedings, motions, and hearings that will deprive him of **his right to have this Court decide arbitrability** and **his right to a jury trial**." 21CR5615; SCR18 (emphasis added).

However, as this court explained in *D. Wilson Constr. Co. v. McAllen Ind. Sch. Dist.*, 848 S.W.2d 226, 231 (Tex. App.—Corpus Christi 1992, writ dism'd

w.o.j.), and reiterated in *In re Burton, McCumber & Cortez, LLP*, 115 S.W.3d 235, 237 (Tex. App.—Corpus Christi 2003, orig. proceeding), when a party contractually agrees to arbitrate a dispute, it is not deprived of its right to a jury trial and access to the courts, because it has already waived its right to recourse in the courts.

### A. Plaintiff has no right to have the Trial Court decide arbitrability; Arbitrator Black decides all arbitrability disputes.

Under the FAA, Texas law, the Election And Arbitration Agreement and the DSI Rules, Arbitrator Black—not the courts—decides all questions regarding the Election And Arbitration Agreement's enforceability or validity. The Election And Arbitration Agreement incorporates by reference the Arbitration Procedures from the Plan's SPD. PX2 at p.2 of 4. The Arbitration Procedures stipulate to the application of the FAA. PX2 at p.22.

"Under the FAA, ***absent*** unmistakable evidence that the parties intended the contrary, it is the court rather than the arbitrator that must decide 'gateway matters,' such as whether a valid arbitration agreement exists." *Rio Grande Xarin, II, Ltd. v. Wolverine Robstown, LP*, 2010 Tex. App. LEXIS 5189 at *21, 2010 WL 2697145 (Tex. App.—Corpus Christi July 6, 2010, pet. dism'd)(mem. op)(citing *In re Weekly Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005))(emphasis added). However, when "clear and unmistakable evidence" exists that the parties intended for an arbitrator to decide "gateway" questions of arbitrability like enforceability and validity, such matters are for determination by the arbitrator, not the courts. *E.g.*, *Rio Grande*

*Xarin, II, Ltd.*, 2010 Tex. App. LEXIS 5189 at *21-*23. "The rule that courts usually decide issues of arbitrability is a default rule that applies ***unless the contract provides otherwise***." *Ernst & Young LLP v. Martin*, 278 S.W.3d 497, 500 (Tex. App.—Houston [14th Dist.] 2009, no pet)(holding that unconscionability issue was for the arbitrator to decide and conditionally granting writ of mandamus)(citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002), *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995), and *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 61 n.38 (Tex. 2008))(emphasis added).

The Election And Arbitration Agreement provides in boldface type that the kinds of claims that it covers include "any and all" "**claims challenging the existence, validity or enforceability of this Agreement (in whole or in part) or challenging the applicability of this Agreement to a particular dispute or claim.**" PX2 at p.2 of 4 (emphasis in original). So-called "delegation provisions" like this are "clear and unmistakable evidence" of the intent to arbitrate enforceability and validity and are fully enforceable under the FAA. *See Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010)(requiring employee's unconscionability claim to be decided by the arbitrator); *Aviles v. Russell Stover Candies, Inc.*, 559 Fed. Appx. 413, 2014 U.S. App. LEXIS 6248 (5th Cir. April 4, 2014)(nonsubscriber occupational injury case; enforcing delegation provision identical to this one between Plaintiff and Stripes); *IHS Acquisition No. 131, Inc.*

*d/b/a Horizon Healthcare Center at El Paso v. Iturralde*, 387 S.W.3d 785, 792-93 (Tex. App.—El Paso, 2012, no pet.)(nonsubscriber occupational injury case; enforcing delegation provision identical to this one between Plaintiff and Stripes); *IHS Acquisition No. 171, Inc. d/b/a Mesa Hills Specialty Hospital v. Beatty-Ortiz*, 387 S.W.3d 799, 807-08 (Tex. App.—El Paso, 2012, no pet.)(same).[1]

Plaintiff and Stripes agreed to arbitrate under the DSI Rules, PX2 at p.19, which their counsel and the Trial Court acknowledged in the Agreed Stay Order are applicable. 1CR570-571; DX2. Under both the FAA and Texas law, when parties to an arbitration agreement agree to arbitrate under certain rules, they are thereafter bound by those rules. *E.g., Volt Info. Sciences, Inc. v. Board of Trustees*, 489 U.S. 468, 479 (1989)(parties to an arbitration agreement may "specify by contract the rules under which that arbitration will be conducted"); *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 574 (Tex. 1999)(agreement to arbitrate in accordance

---

[1] Under *Rent-A-Center, West, Inc. v. Jackson*, an employee's unconscionability challenge to an FAA-governed arbitration agreement with his employer that is not specifically aimed at the agreement's delegation provision must be arbitrated. 561 U.S. at 67-76. During his opening statement at the temporary injunction hearing, Mr. Gonzales stated: "So the whole issue in the case and then is the enforceability *of an arbitration agreement*. And to put it in a nutshell, we believe that the trial court, not the arbitrator, makes that decision." RR3 p.7,ll.14-17 (emphasis added). Later, his co-counsel, Ms. Reilly, argued during opening statement that "we say, look, *this entire agreement is not valid*." RR3 p.54,ll.23-24 (emphasis added). Indeed, a word-search of the Reporter's Record shows that only Sarles, counsel for Stripes, argued about the delegation provision in the Election And Arbitration Agreement. Similarly, Plaintiff's First Amended Application argued only against the unconscionability of the Election And Arbitration Agreement in general, rather than the delegation provision specifically: "This emergency stay is necessary to maintain the status quo of the parties until the Court considers the existence of a valid *arbitration agreement* and whether or not *it* was unconscionable at the time *it* was made." 20CR4610 (emphasis added).

with "the applicable rules of the American Arbitration Association" made the AAA rules binding); *In re Neutral Posture, Inc.*, 135 S.W.3d 725, 729 (Tex. App.—Houston [1st Dist.] 2003, orig. proceeding)(same).

DSI Rule 5(a) provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." DX3 at p.2. Both federal and Texas courts hold that "[w]hen . . . the parties agree to a broad arbitration clause and explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Rio Grande Xarin, II, Ltd. v. Wolverine Robstown, LP*, 2010 Tex. App. LEXIS 5189 at *22-*23, 2010 WL 2697145 (Tex. App.—Corpus Christi July 6, 2010, pet. dism'd)(mem. op)(quoting *Saxa v. DFD Architecture Inc.*, 312 S.W.3d 224, 230 (Tex. App.—Dallas 2010, pet. denied), and citing *Haddock v. Quinn*, 287 S.W.3d 158, 172 (Tex. App.—Fort Worth 2009, pet. denied), *Burlington Resources Oil & Gas Co. v. San Juan Basin Royalty Trust*, 249 S.W.3d 34, 39-42 (Tex. App.—Houston [1st Dist.] 2007, pet. denied), and *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1372-73 (Fed. Cir. 2006)); *Momentis U.S. Corp. v. Weisfeld*, 2014 Tex. App. LEXIS 8000 at 13, 2014 WL 3700697 (Tex. App.—Dallas July 23, 2014, no pet.)(mem. op.)(also quoting *Saxa* and holding that "[u]nder the clear terms of the parties' agreement, whether the

arbitration agreement is illusory, unconscionable, or against public policy is for the arbitrator to decide."); *see, e.g., Schlumberger Tech. Corp. v. Baker Hughes, Inc.*, 355 S.W.3d 791, 803 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Aspri Investments, LLC v. Afeef*, 2011 Tex. App. LEXIS 7082 at *28 (Tex. App.—San Antonio Aug. 31, 2011, pet. dism'd)(mem. op.); *Petrofac, Inc. v. Dynmcdermott Petrol. Ops. Co.*, 687 F.3d 671, 675 (5th Cir. 2012); *Terminix Int'l Co. v. Palmer Ranch Ltd.*, 432 F.3d 1327, 1332 (11th Cir. 2005); *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005).

Under both the Election And Arbitration Agreement and the DSI Rules, Arbitrator Black—not the courts—decides all disputes regarding the Election And Arbitration Agreement's enforceability or validity. Plaintiff already has waived his right to a jury trial and access to the courts. *D. Wilson Constr. Co.*, 848 S.W.2d at 231; *In re Burton, McCumber & Cortez, LLP*, 115 S.W.3d at 237. Plaintiff cannot further waive rights that are already waived and failed to establish irreparable harm.

### B. Plaintiff has waived any objection to Arbitrator Black's jurisdiction.

Having elected in 2012 to accept the optional terms of the Election And Arbitration Agreement and then in 2013-2014 having accepted and retained more than $450,000 in Plan benefits paid in reliance on his acceptance of the Election And Arbitration Agreement, much of it paid while Plaintiff was represented by counsel who understood that the Plan was paying the benefits because Plaintiff had accepted

the Election And Arbitration Agreement, Plaintiff no longer has a jury trial right that can be further waived. Moreover, Plaintiff **_will_** not waive his right to object to the jurisdiction of Arbitrator Black by participating in briefing and a hearing in the DSI Arbitration on Stripes' Motion To Determine The Enforceability Of The Parties' Election and Arbitration Agreement, 20CR4622-4629, because Plaintiff on March 6 and 19, 2015 **_already_** waived his right to object to Arbitrator Black's jurisdiction when Plaintiff twice voluntarily demanded arbitration to initiate the DSI Arbitration.

DSI Rule 5(c) provides that "[a] party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of its Answer to the Demand or Counterclaim that gives rise to the objection." DX3 at p.2. DSI Rule 5(c) is identical to AAA Employment Arbitration Rule 6(c), RR3 p.109,ll.3-8, which Texas courts have enforced, holding that failure to timely object in accordance with the rule constitutes waiver. _See_ _Thomas Petroleum, Inc. v._ _Morris_, 355 S.W.3d 94, 98 (Tex. App.—Houston [1st Dist.] 2011, pet. denied), _cert._ _denied_, 133 S. Ct. 210 (2012); _Ouzene v. Haynes_, 2012 Tex. App. LEXIS 2888 at *10, 2012 WL 1249420 (Tex. App.—Houston [1st Dist.] 2012, pet. denied)(mem. op.). It is undisputed that Plaintiff has never challenged the DSI arbitrator's jurisdiction. RR3 p.115,l.24 – p.116,l.21. Under DSI Rule 5(c), Plaintiff has thus waived any challenge to Arbitrator Black's jurisdiction over arbitrability disputes like this one set, improperly, for hearing on July 28, 2015 before the Trial Court.

- 49 -

Plaintiff also waived any objection to the DSI arbitrator's jurisdiction by voluntarily, knowingly and unconditionally submitting to DSI on March 6 and 19, 2015 two Demands for Arbitration, DX4 and DX5, neither of which made any objection whatsoever to the DSI's arbitrator's jurisdiction. Plaintiff then participated in the selection of Arbitrator Black and made no objection to his appointment. PX4d; CR3 p.20,ll18-24; *see* CR3 p.31,ll.12-18. *See In re Hospitality Employment Group,* 234 S.W.3d 832, 835 (Tex. App.—Dallas 2007, orig. proceeding)(holding that had injured employee of nonsubscriber intended to challenge part of the arbitration agreement, "she should have done so prior to participating in the arbitration proceedings."); *Circuit City Stores v. Curry*, 946 S.W.2d 486, 489 (Tex. App.—Fort Worth 1997, orig. proceeding)(employee's arbitration request and participation in selecting an arbitrator established existence of arbitration agreement); *Pilgrim Investment Corp. v. Reed*, 156 Wis. 2d 677, 686, 457 N.W.2d 544, 548 (Wis. Ct. App.)("Absent a reservation or objection to the arbitration process, when one party participates in preliminary arbitration procedures preparatory to the hearing on the merits, that party is signaling to the other side that full participation in the process is intended."), *review denied*, 458 N.W.2d 533 (Wis. 1990).

The Trial Court's temporary injunction orders do not prevent imminent, irreparable harm. Plaintiff cannot now obtain a judicial "undoing" of the waivers

that his own signature on the Election And Arbitration Agreement and his attorneys' signatures on the Agreed Stay Order and on his two voluntary DSI Demands for Arbitration have effected. Any "harm" purportedly suffered by arbitrating under the Election And Arbitration Agreement and the DSI Rules is not "imminent;" because it already occurred before the temporary injunction hearing began.

## VI. PLAINTIFF FAILED TO PROVE A PROBABLE RIGHT TO THE INJUNCTIVE RELIEF SOUGHT.

Plaintiff also failed to establish another necessary element for the issuance of any temporary injunction, "a probable right to the relief sought." *Butnaru*, 84 S.W.3d at 204. Paragraph 1 of both the May 27 and June 8 temporary injunction orders states that "Plaintiff will be irreparably injured because Plaintiff will be subject to arbitration proceedings, motions, and hearings that will deprive him of **his right to have this Court decide arbitrability** and **his right to a jury trial**." 21CR5615; SCR18 (emphasis added). However, Plaintiff failed to prove either (1) a probable right to judicial determination of arbitrability disputes under the Election And Arbitration Agreement, or (2) a probable right to trial by jury.

### A. Plaintiff failed to prove that the courts have the right to decide arbitrability disputes.

As shown above in Section V, the delegation provision of the Election And Arbitration Agreement requires that all disputes about the alleged unconscionability of the Election And Arbitration Agreement be arbitrated. This delegation provision

is absolutely enforceable under the FAA. *See Jackson*, 561 U.S. 63 (requiring employee's unconscionability claim to be decided by the arbitrator); *Aviles*, 2014 U.S. App. LEXIS 6248 (enforcing delegation provision identical to this one between Plaintiff and Stripes); *Iturralde*, 387 S.W.3d at 792-93 (same); *Beatty-Ortiz*, 387 S.W.3d at 807-08 (same).

Moreover, the Election And Arbitration Agreement's incorporation of DSI Rule 5(a) independently constitutes "clear and unmistakable" evidence that arbitrability disputes are to be decided by the DSI arbitrator. *Rio Grande Xarin, II, Ltd.*, 2010 Tex. App. LEXIS 5189 at *22-*23; *Saxa*, 312 S.W.3d at 230; *Haddock*, 287 S.W.3d at 172; *Burlington Resources Oil & Gas Co.*, 249 S.W.3d at 39-42; *Momentis U.S. Corp.*, 2014 Tex. App. LEXIS 8000 at 13.

Having failed even to assert, much less establish, the unconscionability of the delegation provision or of DSI Rule 5, *see footnote 1 supra*, Plaintiff has failed to raise any argument that would authorize the Trial Court rather than Arbitrator Black to decide the Election And Arbitration Agreement's enforceability.

## B. Plaintiff failed to prove that he has the right to trial by jury.

It is undisputed that Plaintiff signed the Election And Arbitration Agreement. PX2 at p.4; RR3 p.159,ll.8-23; RR3 p.14,ll.23-24. However, in an attempt to avoid his obligation to arbitrate his claims against Stripes, Plaintiff's First Amended Application conclusorily asserted in Paragraph 14 that "[i]t is probable that Plaintiff

will prevail on the merits of his objections and challenges to the validity of the subject arbitration agreement and whether it is an unconscionable agreement." 20CR4609. Plaintiff's unconscionability argument, in turn, is based solely on Plaintiff's assertion that the Election And Arbitration Agreement is unenforceable as procedurally unconscionable, because Plaintiff is allegedly "unable to read the English language, and must have someone translate anything written in said language to Arabic in order to comprehend and understand what is written." Regardless, under Texas law, as a matter of law, Plaintiff's asserted English deficiency does not render the Election And Arbitration Agreement procedurally unconscionable. The undisputed facts also show that Plaintiff has no English deficiency.

### 1. The Election And Arbitration Agreement is enforceable.

The Texas Supreme Court has repeatedly held that there is nothing per se or inherently unconscionable about arbitration agreements. *Royston, Rayzor, Vickery & Williams, LLP v. Lopez*, 2015 Tex. LEXIS 622 at *8 (Tex. June 26, 2015); *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 678 (Tex. 2006); *In re AdvancePCSHealth LP*, 172 S.W.3d 603, 608 (Tex. 2005); *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 574 (Tex. 1999); *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90 (Tex.1996).

In *Morrison v. Insurance Company of North America*, 69 Tex. 353, 359, 6 S.W.605, 606 (1887), explained a bedrock principle of Texas law:

> Every person having capacity to make a contract, in the absence of fraud, misrepresentation or concealment, must be held to have known what the words used in a contract made by him were, and to have known their meaning; and he must also be held to have known and fully comprehended the legal effect of the contract which the words used made.

Just last month, in a case involving an arbitration agreement, the Texas Supreme Court reiterated this fundamental "principle that absent fraud, misrepresentation, or deceit, one who signs a contract is deemed to know and understand its contents and is bound by its terms." *Lopez*, 2015 Tex. LEXIS 622 at *8.

Applying this principle, Texas law simply rejects the proposition that an arbitration agreement's enforcement can be avoided by a signatory's assertion that he did not subjectively understand arbitration. *E.g., In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005)(absent fraud, misrepresentation or deceit, parties are bound by terms of the contract they signed, regardless of whether they read it or thought it had different terms"); *Mancias*, 934 S.W.2d at 90 (employee's claim that he did not read and understand arbitration clause did "not excuse him from arbitration"); *Cantella & Co. v. Goodwin*, 924 S.W.2d 943, 944 (Tex. 1996)(even though signatory did not know of arbitration provision when he signed contract, the legal presumption that a party knows the contents of the agreements it signs required provision's enforcement); *D. Wilson Constr. Co. v. McAllen Indep. School Dist.*, 848 S.W.2d

226, (Tex. App.—Corpus Christi 1992, writ dism'd w.o.j.)("a party who signs a contract is presumed to know its contents"); *In re Big 8 Food Stores, Ltd.*, 166 S.W.3d 869, 878 (Tex. App.—El Paso 2005, orig. proceeding)("The undisputed evidence is that she signed the agreement, was injured on the job and actually received and accepted benefits under the plan. The fact that she now contends that she did not understand a specific clause or term is immaterial to the validity of the agreement.").

Similarly, for more than 80 years, Texas law has also held that illiteracy or the inability to read English does not relieve a contracting party of the consequences of his agreement; if he is unable to read the contract, he must have it read to him. *E.g., Indemnity Ins. Co. of North America v. W.L. Macatee & Sons*, 129 Tex. 166, 170-71, 101 S.W.2d 553, 556-57 (1937)(holding that facts that paymaster did not explain or point out assignment of wage claims on back of payroll sheets and that workmen did not know contents of assignment or consciously intend to assign their claims did not prevent valid assignments from being made, even by illiterate workmen, because one is presumed as a matter of Texas law to intend what he signs); *De Villagomes v. First Nat'l Bank-Edinburg*, 2005 Tex. App. LEXIS 6175 (Tex. App.—Corpus Christi 2005, pet. denied)(mem. op.)("a party's failure to read an instrument before signing it is not a ground for avoiding it. . . . This is true even in the case of illiteracy or an inability to read English.")(citing *Vera v. North Star*

*Dodge Sales, Inc.*, 989 S.W.2d 13, 17 (Tex. App.—San Antonio 1998, no pet), and *Tamez v. Southwestern Motor Transp., Inc.*, 155 S.W.3d 564, 570 (Tex. App.—San Antonio 2004, no pet.)("even though English was not his first language, we must presume, as a matter of law, that [appellant] read and understood the contract, unless he was prevented from doing so by trick or artifice.")); *Nguyen Ngoc Giao v. Smith & Lam, P.C.*, 714 S.W.2d 144, 146 (Tex. App.—Houston [1st Dist.] 1986, no writ)(binding Vietnamese client to fee agreement because, "if a person is unable to read the contract, he must have it read to him').

Texas law also has long rejected the proposition that one party to a contract owes a duty to explain the contract to an illiterate or English-illiterate party. *E.g. Associate Employers Lloyds v. Howard*, 156 Tex. 277, 281, 294 S.W.2d 706, 708 (1956)(workers' compensation insurer held to have had no duty to send explanatory letter or otherwise explain to injured, illiterate employee Compromise Settlement Receipt accompanying check that employee cashed thinking it was for past due compensation benefits); *Guzman v. Inter National Bank*, 2008 Tex. App. LEXIS 2034, 2008 WL 739828 at n.2 (Tex. App.—Corpus Christi 2008, no pet.)(mem. op.) ("Appellant also argues that because she does not read or speak English, INB had the duty to take affirmative steps to ensure adequate understanding. We have never recognized such a duty.").

Moreover, as shown in Paragraphs 2-7 of the Statement Of Facts, Plaintiff is well educated and is not illiterate in English. It is impossible to believe that Plaintiff could have passed his Business Administration courses and an English Composition course at Mississippi State University, or successfully leased, borrowed money for, managed and sold his Chevron gas station business, if he really was illiterate in English. Plaintiff gave his deposition in this case in English and without the use of an interpreter, RR3 p.90,l.11 – p.91,l.8, and then neither Plaintiff nor his attorney made any changes to Plaintiff's deposition transcript testimony. DX23. Plaintiff has twice verified in English his interrogatory answers in this case. DX19 at p.14; DX22 at p.5.

Although "Sammy Mrayyan did not explain the meaning of the arbitration agreement to [Plaintiff] before [he] signed the Election And Arbitration Agreement," and "Sammy Mrayyan did not explain any of the contents of the Election And Arbitration Agreement to [Plaintiff] before [he] signed it," RR3 p.256,ll.3-16; DX24 at ¶6, Plaintiff failed to establish that his brother, Sammy Mrayyan, could not have explained the same Election And Arbitration Agreement that he had signed two months before, DX7 at p.4; RR3 p.132,l.21 – p.133,l.7, and that had been explained to Sammy Mrayyan by his friend and Area Manager, Kamal Ghanem. RR4 p.49,ll.3-14; RR3 p.79,ll.1-9. Plaintiff simply proved that he never asked Sammy Mrayyan, Kamal Ghanem or anyone else to explain the Election And Arbitration Agreement,

as Plaintiff was required to do under Texas law if he did not understand it or could not read it, and given the undisputed facts about Sammy Mrayyan's U.S. educational and occupational background in Paragraphs 8-10 of the Statement Of Facts, it would be an abuse of discretion to determine that Sammy Mrayyan could not have explained the Election And Arbitration Agreement to Plaintiff had Plaintiff asked him to do so.

### 2. Plaintiff ratified the Election And Arbitration Agreement.

Even if, as Plaintiff now belatedly contends, the Election And Arbitration Agreement were unconscionable or otherwise voidable (all of which Stripes vigorously denies), it is fully enforceable against Plaintiff. Plaintiff knew that the Plan paid the official billing statements from the hospitals that he attended and for the treatment that he received, RR3 p.235,l.11 – p.236,l.11; DX19 at pp.9-10; DX20, and that he was receiving a weekly check from the Plan. RR3 p.236,l.12 – p.237,l.24; DX20 at second page. Even if Plaintiff were to contend that he did not understand how or why the Plan paid these benefits, his attorney, Mr. Burkett certainly understood. *See* Statement Of Facts at ¶¶30-33. As a matter of law, the notice and knowledge of Mr. Burkett is imputed to Plaintiff. *See Rogers v. B&R Development, Inc.*, 523 S.W.2d 15, 18 (Tex. Civ. App.—Fort Worth 1975, no writ)("Whether [the client] knew each of these items is immaterial because such knowledge that his attorney had is imputed to him."); *Westfield Dev., Inc. v.*

*Rubashkin*, 2007 Tex. App. LEXIS 1154 at \*13-\*14 (Tex. App.—Houston [1st Dist.] 2007, no pet.)(mem. op.)("Westfield, the principal, is bound by the knowledge of its agent, attorney Kelly Newman").

Under Texas law, Plaintiff's undisputed receipt, acceptance and retention of over $450,000 in Plan benefits, much of which was paid while Plaintiff was represented by counsel, ratified the Election And Arbitration Agreement and estops him from now denying its enforceability. *E.g., Big 8 Food Stores*, 166 S.W.3d at 878 (plaintiff employee who claimed she did not understand arbitration agreement ratified it by accepting and retaining "substantial benefits" received as result of having signed arbitration agreement); *Border Steel, Inc.*, 229 S.W.3d at 835 (same); *In re HEB Grocery Co., L.P.*, 299 S.W.3d 393, 399-400 (Tex. App.—Corpus Christi 2009, orig. proceeding) (rejecting the employee's invalidity argument and noting that he "sought and received employee benefits under the Plan prior to filing suit against HEB"); *Bustos v. Intex Aviation Services, Inc.*, 1996 U.S. Dist. LEXIS 14475 (N.D. Tex. 1996) (plaintiff employee's acceptance of $3,000 in benefits from nonsubscriber's ERISA plan constituted her ratification as a matter of law of plan's waiver agreement); *Land Title Company of Dallas, Inc. v. F.M. Stigler, Inc.*, 609 S.W.2d 754, 756 (Tex. 1980) ("Stigler's refusal to tender back the down payment funds, after learning of the subordination agreement and the source of the money, amounted to an affirmance of Russell's unauthorized act and constituted ratification

of the subordination agreement."); *Barker v. Roelke*, 105 S.W.3d 75, 85 (Tex. App.—Eastland 2003, pet. denied)(uncontroverted evidence of acts inconsistent with intent to avoid a contract had effect of ratifying contract as a matter of law).

### 3. The Agreed Stay Order obligates Plaintiff to arbitrate.

As detailed in Paragraphs 38-42 of the Statement Of Facts, Sarles and Mr. Gonzales discussed the Election And Arbitration Agreement and staying all of the claims against Stripes, and they agreed to the Agreed Stay Order, 1CR570-571; DX2; RR3 p.99,l.20 – p.101,l.15, p.104,ll.5-22, p.105,ll.15-19. The Agreed Stay Order states that it is "*Agreed* As To Form Only," not merely "*Approved* As To Form Only." DX2 at p.2 (emphasis added); RR3 p.107,ll.8-14. Mr. Gonzales' partner signed the Agreed Stay Order for Plaintiff and had it entered by the Trial Court. 1CR571; DX2 at p.2; RR3 p.107,ll.15-21. The Agreed Stay Order was not prepared to memorialize any oral ruling by the Trial Court on Stripes' Application. It does not mention any hearing, argument or evidence being presented to the Trial Court, because it was presented to the Trial Court for entry in lieu of any hearing on Stripes' Application. Plaintiff presented no evidence to the contrary.

Besides being an order of the Trial Court, the Agreed Stay Order constitutes a Rule 11 agreement, having satisfied all of the requirements of Rule 11 by being "in writing, signed by the attorneys for both parties and by the judge, and filed with the court's papers as part of the record." *Trevino v. Houston Orthopedic Center*, 831

S.W.2d 341, 344 (Tex. App.—Houston [14th Dist.] 1992, writ denied). As, at a minimum, a valid Rule 11 agreement, the Agreed Stay Order independently obligates Plaintiff to arbitrate his claims against Stripes—even if the Election And Arbitration Agreement is somehow unenforceable. The requisites of Rule 11 having been satisfied, the Trial Court had only the ministerial duty to enforce the Agreed Stay Order as written. *See Guynn v. Corpus Christi Bank & Trust*, 580 S.W.2d 902, 906 (Tex. Civ. App.—Corpus Christi 1979, writ ref'd n.r.e.). As a result, the Trial Court had no discretion to not enforce the Agreed Stay Order.

## VII. STRIPES DID NOT WAIVE ITS ARBITRATION RIGHTS.

As shown in Paragraphs 49-51 of the Statement Of Facts, to protect its $450,000 subrogation interest, the Plan intervened in this lawsuit pursuant to Texas Rule of Civil Procedure 60, not Rule not Rule 40. *See In re Union Carbide Corp.*, 273 S.W.3d 152, 156 (Tex. 2008)("Permissive joinder and intervention are authorized and permitted by separate rules, and the rules provide different processes for addressing the different situations."). The Plan's interests were its own and adverse in many respects to Plaintiff's and Powell's/Merrell's interests. *See Union Carbide*, 273 S.W.3d at 155 (intervenors "interject their interests into a pending suit to which the intervenors have not been invited"); *Akins v. Citizens Nat'l Bank*, 217 S.W.2d 199 (Tex. Civ. App.—El Paso 1948, writ ref'd)(lien holder had right to intervene to protect his interest, adverse to both plaintiff and defendant).

As shown in Paragraphs 52-55 of the Statement Of Facts, Sarles' questioning of Plaintiff's life care plan expert, Dr. Snook, was done expressly as the representative of the Plan, not Stripes. PX5 at p.2 and p.64. Sarles' questioning of Dr. Snook assisted in reducing Plaintiff's $15 million demand and obtaining the $6 million policy-limits settlement between Plaintiff and Merrell and Powell—a settlement that was in the Plan's interest, even if the Plan has not yet recovered its $450,000 subrogation lien out of the settlement proceeds. A strong presumption against waiver of arbitration rights exists under Texas law that imposes a "heavy burden of proof" on the party asserting it to show intentional waiver, a question of law. *In re Bank One*, 216 S.W.825, 827 (Tex. 2007); *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 783 (Tex. 2006); *In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 763 (Tex. 2006); *In re Bruce Terminix Co.*, 988 S.W.2d 702, 704 (Tex. 1998).

Plaintiff has failed to show how Stripes, which asked Dr. Snook nothing, intentionally waived Stripes' arbitration rights. The Trial Court's temporary injunction makes no finding or mention of waiver, and it cannot be supported by an unproved allegation that Sarles, expressly appearing on behalf of the Plan and shown to be pursuing the Plan's interest in achieving settlement, somehow was instead really pursuing Stripes' defense in the DSI Arbitration. *See* Perry Homes v. Cull, 258 S.W.3d 580, 593 (Tex. 2008)(waiver can be implied from a party's conduct, but the party's conduct must be unequivocal).

## CONCLUSION

The Trial Court abused its discretion in entering the May 27 and June 8, 2015 temporary injunction orders. Plaintiff's applications for injunctive relief and the Trial Court's injunction orders were all filed in violation of the stay imposed by Section 171.025 of the Texas Civil Practice and Remedies Code and the Agreed Stay Order and are void. Plaintiff's applications for the temporary injunction were not properly verified and properly filed to be before the Trial Court. Plaintiff failed to plead and prove a cause of action for injunctive relief against Stripes. The temporary injunction orders destroyed rather than preserved the status quo between Plaintiff and Stripes. Plaintiff failed to establish imminent, irreparable harm, because all arbitrability disputes are to be decided by the DSI arbitrator under the Election And Arbitration Agreement and the DSI Rules. Having voluntarily initiated the DSI Arbitration without preserving any right to challenge the DSI arbitrator's jurisdiction, Plaintiff has waived any objection under DSI Rule 5. Plaintiff failed to prove that the courts decide arbitrability, failed to prove that the Election And Arbitration Agreement is unenforceable, failed to show how Plaintiff's knowing acceptance of $450,000 in Plan benefits did not constitute ratification and estoppel, and failed to articulate an explanation why the Agreed Stay Order does not independently obligate Plaintiff to arbitrate as a Rule 11 agreement. Finally, Plaintiff's waiver argument fails to support the entry of the temporary injunction.

## PRAYER

For these reasons, Appellant requests that this Court vacate or reverse in all respects the Trial Court's temporary injunction orders of May 27 and June 8, 2015, order all further proceedings before the Trial Court stayed pending resolution of the Parties' claims and defenses in binding arbitration under the Election And Arbitration Agreement and DSI Rules in the DSI Arbitration before Arbitrator Black, and award Appellant its costs on appeal, together with such other and further relief that the Court deems appropriate.

Dated: July 6, 2015

Respectfully submitted,

/s/ Gary D. Sarles                              .
Gary D. Sarles
State Bar No. 17651100
**SARLES & OUIMET**
370 Founders Square
900 Jackson Street
Dallas, Texas 75202
Telephone: (214) 573-6300
Facsimile: (214) 573-6306
gsarles@sarleslaw.com

**ATTORNEYS FOR APPELLANT**

## CERTIFICATE OF SERVICE

In compliance with Texas Rule of Appellate Procedure 9.5, I hereby certify that a true and correct copy of the foregoing Appellant's Brief was served on counsel for Appellee via Eservice on this 6th day of July, 2015.

/s/ Gary D. Sarles                              .
Gary D. Sarles

## CERTIFICATE OF COMPLIANCE WITH TEX. R. APP. PROC. 9.4(i)(3)

In compliance with Texas Rule of Appellate Procedure 9.4(i)(3), I hereby certify that Appellees' Brief complies with the word and page limitations of Texas Rule of Appellate Procedure 9.4(i)(2). According to the word count of the Microsoft Word 2003 word-processing system, this brief contains 14,950 words, excluding the parts of the brief exempted by Texas Rule of Appellate Procedure 9.4(i)(1).

/s/ Gary D. Sarles .
Gary D. Sarles

NO. 13-15-00246-CV

IN THE COURT OF APPEALS
FOR THE THIRTEENTH DISTRICT OF TEXAS
AT CORPUS CHRISTI/EDINBURG, TEXAS

Stripes LLC,

Appellant/Defendant,

v.

Hazem Mrayyan,

Appellee/Plaintiff.

On Appeal from County Court at Law Number One of Nueces County, Texas
The Honorable Robert J. Vargas, Judge Presiding

APPELLANT'S APPENDIX

## INDEX

| Tab No. | Description | Record Citation |
|---------|-------------|-----------------|
| 1 | Order Granting Plaintiff's Request For Temporary Injunction | 21CR5611-5612 |
| 2 | Order Modifying Plaintiff's Temporary Injunction Order | SCR18-20 |
| 3 | Texas Civil Practice and Remedies Code Section 171.025 | - |
| 4 | Election And Arbitration Agreement and incorporated Arbitration Procedures from the Summary Plan Description | PX2 |
| 5 | Order Granting Stripes LLC's Application for Order for Arbitration | DX2 |
| 6 | Dispute Solutions, Inc. Arbitration Rule 5 | DX3 at p.2 |
| 7 | Hazem Mrayyan's Demand for Arbitration, March 6, 2015 | DX4 |
| 8 | Demand for Arbitration Form, March 19, 2015 | DX5 |

Cause No. 2013-CCV-61910-1

| | | |
|---|---|---|
| HAZEM MRAYYAN | § | IN THE COUNTY COURT |
| PLAINTIFF, | § | |
| | § | |
| V. | § | AT LAW NO. 1 |
| | § | |
| ERIC SCOTT POWELL, | § | |
| MERRELL LEASE SERVICE, | § | |
| INC., AND STRIPES, LLC | § | |
| DEFENDANTS. | § | NUECES COUNTY, TEXAS |

### ORDER GRANTING PLAINTIFF'S REQUEST
### FOR TEMPORARY INJUNCTION

1.     After considering Plaintiff's, Hazem Mrayyan's, Plaintiff's First Supplemental Application for Temporary Injunction, the pleadings, the affidavits, evidence, and arguments of counsel, the Court finds there is evidence that harm is imminent to Plaintiff, and if the Court does not issue the temporary injunction, Plaintiff will be irreparably injured because Plaintiff will be subject to arbitration proceedings, motions, and hearings that will deprive him of his right to have this Court decide arbitrability and his right to a jury trial. The Court is of the opinion that Plaintiff's request for a temporary injunction to stay arbitration proceedings is GRANTED.

2.     It is therefore ORDERED that the Clerk of Court shall issue a Writ of Injunction pending final hearing on June 4, 2015, enjoining Defendant Stripes, LLC or any of its officers, agents, servants, employees, attorneys, representatives, or any person in active concert or participation with it who receives actual notice of this Order by personal service or otherwise are hereby stayed from participating or engaging in any and all arbitration proceedings,

# TAB 1

filings, motions, and hearings with Dispute Solutions, Inc. where Stripes, LLC and Hazem Mrayyan are both named parties to a cause or matter.

3. ~~It is further ORDERED that any and all arbitration proceedings,~~ filings, motions, and hearings are hereby stayed, by way of the Writ of Injunction, with Dispute Solutions, Inc. where Stripes, LLC and Hazem Mrayyan are both named parties to a cause or matter.

4. It is therefore ORDERED that the clerk issue notice to Defendant ~~Stripes, LLC that a trial on the merits is set for June 4, 2015 at 10:00 a.m.~~

5. It is therefore ORDERED that Plaintiff Hazem Mrayyan shall, prior to the issuance of the injunction, file with the Clerk a bond executed by him in the sum of $ _5̶0̶0̶_ , payable to Defendant Stripes, LLC approved and conditioned as required by law.

SIGNED on _May 27_, 2015, at _9:34_ a.m. ~~p.m.~~

_____
PRESIDING JUDGE

TAB 1                    5612

Cause No. 2013-CCV-61910-1

| | | |
|---|---|---|
| HAZEM MRAYYAN<br>*PLAINTIFF,* | § | IN THE COUNTY COURT |
| | § | |
| V. | § | AT LAW NO. 1 |
| | § | |
| STRIPES, LLC<br>*DEFENDANTS.* | § | NUECES COUNTY, TEXAS |

## ORDER MODIFYING PLAINTIFF'S
## TEMPORARY INJUNCTION ORDER

After considering Plaintiff's Expedited Motion to Modify Temporary Injunction Order to modify the order issued on May 27, 2015 the arguments of counsel, and the evidence presented, the Court GRANTS the motion and ORDERS that the Temporary Injunction Order issued on May 27, 2015 is modified as follows:

1.      After considering Plaintiff's, Hazem Mrayyan's, Plaintiff's First Supplemental Application for Temporary Injunction, the pleadings, the affidavits, evidence, and arguments of counsel, the Court finds there is evidence that harm is imminent to Plaintiff, and if the Court does not issue the temporary injunction, Plaintiff will be irreparably injured because Plaintiff will be subject to arbitration proceedings, motions, and hearings that will deprive him of his right to have this Court decide arbitrability and his right to a jury trial. The Court is of the opinion that Plaintiff's request for a temporary injunction to stay arbitration proceedings is GRANTED.

2.      It is therefore ORDERED that the Clerk of Court shall issue a Writ

TAB 2

18

of Injunction pending a "trial on the merits" is held and this Court has the opportunity to consider Plaintiff's Motion to Lift Stay of Proceedings and Dismiss Stripes, LLC's Order for Arbitration, as permitted by the Thirteenth Court of Appeals.

3. It is therefore ORDERED that the Clerk of Court shall issue a Writ of Injunction enjoining Defendant Stripes, LLC or any of its officers, agents, servants, employees, attorneys, representatives, or any person in active concert or participation with it who receives actual notice of this Order by personal service or otherwise are hereby stayed from participating or engaging in any and all arbitration proceedings, filings, motions, and hearings with Dispute Solutions, Inc. where Stripes, LLC and Hazem Mrayyan are both named parties to a cause or matter.

4. It is further ORDERED that any and all arbitration proceedings, filings, motions, and hearings are hereby stayed, by way of the Writ of Injunction, with Dispute Solutions, Inc. where Stripes, LLC and Hazem Mrayyan are both named parties to a cause or matter.

5. It is therefore ORDERED that the clerk issue notice to Defendant Stripes, LLC that a trial on the merits is set for July 28, 2015 at 9:00 a.m

6. It is therefore ORDERED that Plaintiff Hazem Mrayyan shall, prior to the issuance of the injunction; file with the Clerk a bond executed by him in the sum of $500.00, payable to Defendant Stripes, LLC approved and conditioned as required by law if not already done.

TAB 2

19

SIGNED on 6/8/ , 2015, at 9:10 a.m./p.m.

_____
PRESIDING JUDGE

TAB 2

# Tex. Civ. Prac. & Rem. Code § 171.025

This document is current through the 2015 regular session, 84th Legislature, S.B. 45, S.B. 293 (ch. 2), S.B. 415(ch. 15), S.B. 459, S.B. 529 (ch. 37), S.B. 835 (ch. 6), S.B. 901 (ch. 54), S.B. 903 (ch. 3), S.B. 1749 (ch. 29), and S.B. 1985 (ch. 4).

**Texas Statutes and Codes > CIVIL PRACTICE AND REMEDIES CODE > TITLE 7. ALTERNATE METHODS OF DISPUTE RESOLUTION > CHAPTER 171. GENERAL ARBITRATION > SUBCHAPTER B. PROCEEDINGS TO COMPEL OR STAY ARBITRATIONS**

## § 171.025. Stay of Related Proceeding

**(a)** The court shall stay a proceeding that involves an issue subject to arbitration if an order for arbitration or an application for that order is made under this subchapter.

**(b)** The stay applies only to the issue subject to arbitration if that issue is severable from the remainder of the proceeding.

## History

Enacted by Acts 1997, 75th Leg., ch. 165 (S.B. 898), § 5.01, effective September 1, 1997.

LexisNexis ® Texas Annotated Statutes

Copyright © 2015 by Matthew Bender & Company, Inc. a member of the LexisNexis Group All rights reserved.

# TAB 3



**EXHIBIT**

_2_

# ELECTION AND ARBITRATION AGREEMENT

By signing this Election And Arbitration Agreement (hereinafter "Agreement"), I, the undersigned employee, voluntarily elect to participate in the Susser Holdings, L.L.C. Employee Injury Benefit Plan (hereinafter the "Plan") and agree with my employer (hereinafter "the Company") to the following:

**ENROLLMENT IN THE PLAN:** I understand that the Company, as expressly permitted by Texas law, does <u>not</u> carry workers' compensation insurance for its Texas employees, that it is a "nonsubscriber" under the Texas Workers' Compensation Act (hereinafter the "Act"), that it is <u>not</u> required as a nonsubscriber to provide <u>any</u> benefits whatsoever for on-the-job injuries, that it has instead <u>voluntarily</u> established the Plan under <u>federal</u> law to provide certain benefits for on-the-job injuries, and that the Plan is <u>not</u> workers' compensation insurance.

I understand that if I am injured on the job, I am, by signing and <u>agreeing</u> to this Agreement, eligible under the Plan's terms for the medical, disability, death, burial and dismemberment benefits described in the Plan and summarized in the Summary Plan Description. I understand that if I <u>reject</u> this Agreement, I will <u>not</u> be eligible for Plan Benefits.

I understand and agree that the Plan's benefits are <u>not</u> workers' compensation benefits, but are provided <u>without</u> regard to my own fault or negligence, <u>without</u> the necessity of me initiating a lawsuit or arbitration, and <u>without</u> me proving that the Company (or one of its employees) was negligent in causing my injury (or death).

I have received a copy of the Summary Plan Description of the Plan. I understand and agree that, if I am injured on the job at the Company, I will follow the rules and procedures described in the Summary Plan Description.

**MUTUAL PROMISES TO RESOLVE CLAIMS BY BINDING ARBITRATION:** I recognize that disputes may arise between the Company and me during or after my employment with the Company. I agree with the Company to submit any and all such disputes to <u>binding</u> arbitration.

**I acknowledge and understand that by signing this Agreement I am giving up the right to a jury trial on all of the claims covered by this Agreement** in exchange for eligibility for the Plan's medical, disability, dismemberment, death and burial benefits and in anticipation of gaining the benefits of a speedy, impartial, mutually-binding procedure for resolving disputes.

**This agreement to resolve claims by arbitration mutually binds and benefits both me (and my spouse, minor children, heirs, parents and legal representatives) and the Company (and its successors, subsidiaries and affiliates, including Susser Holdings Corporation, Stripes Holdings LLC, Susser Holdings, L.L.C., Susser Finance Corporation, APT Management Company, L.L.C., Applied Petroleum Technologies, Ltd., Stripes No. 1009 LLC, Stripes LLC, Susser Financial Services**

© 2007 Sarles & Ouimet, L.L.P.



EXHIBIT 1
TAB 4

EXHIBIT "A"

Exhibit I

LLC, Stripes Acquisition LLC, TCFS Holdings, Inc., Town & Country Food Stores, Inc., Corpus Christi Reimco, LLC, Susser Petroleum Company LLC, T&C Wholesale, Inc., GoPetro Transport LLC, SSP BevCo II LLC, SSP Bev Co I LLC, SSP Beverage LLC, TND Beverage LLC, C&G Investments, LLC and Susser Company, Ltd., and all of their officers, directors, shareholders, members, partners, owners, employees and agents and the Plan and its administrators and fiduciaries).

**EXAMPLES OF CLAIMS SUBJECT TO ARBITRATION:** Examples of claims and disputes covered by this Agreement include, <u>but are not limited to</u>:

(a) all claims and disputes that I (and my spouse, minor children, heirs, parents and legal representatives, if any) may <u>now</u> have or may in the <u>future</u> have against the Company or against its successors, subsidiaries and affiliates or any of their officers, directors, shareholders, members, partners, owners, employees and agents, or against the Plan or its administrators and fiduciaries, and
(b) all claims and disputes that the <u>Company</u> or its successors, subsidiaries and affiliates or any of their officers, directors, shareholders, members, partners, owners or the Plan may <u>now</u> have or may in the <u>future</u> have against me (and my spouse, minor children, heirs, parents and legal representatives, if any).

Examples of the <u>types</u> of claims covered by this Agreement include, <u>but are not limited to</u>, any and all:

- claims for wages or other compensation;
- claims for breach of any contract, covenant or warranty (express or implied);
- tort claims, including negligence, negligence per se and gross negligence claims (including claims for personal or bodily injury or physical, mental or psychological injury, without regard to whether or not such injury was sustained on the job);
- claims for wrongful termination (including retaliatory discharge claims);
- claims of harassment or discrimination (including claims based on race, sex, religion, national origin, age, medical condition or disability);
- claims for benefits under the Plan (after exhausting administrative remedies under the terms of the Plan);
- claims for a violation of any other federal, state or other governmental law, statute, regulation or ordinance; and
- **claims challenging the existence, validity or enforceability of this Agreement (in whole or in part) or challenging the applicability of this Agreement to a particular dispute or claim.**

**CLAIMS NOT SUBJECT TO ARBITRATION:** The following matters only are not covered by this Agreement: (a) any criminal complaint or proceedings, and (b) claims before administrative agencies for unemployment benefits.

**COMPLETE AGREEMENT:** The Arbitration Procedures in Section IX of the Summary Plan Description (and also in Section I, Paragraph B of the Plan) are incorporated by reference into, and made part of, this Agreement the same as if they were all written

© 2007 Sarles & Ouimet, L.L.P.



EXHIBIT "A"

EXHIBIT 1
TAB 4

here. This Agreement, together with the incorporated Arbitration Procedures in Section IX of the Summary Plan Description, is the complete agreement between the Company and me. It takes the place of any other oral understanding about arbitration, but other written agreements, policies or procedures may also require me to arbitrate any disputes that I may have with the Company.

I am not relying on any statements, oral or written, on the subject, effect, enforceability or meaning of this Agreement, except as specifically stated in this Agreement. If any provision of this Agreement is determined to be void or otherwise unenforceable, in whole or in part, such determination shall not affect the validity of the remainder of this Agreement.

**NOT AN EMPLOYMENT AGREEMENT:** Neither this Agreement, the Plan nor the Summary Plan Description shall ever be construed to create any contract of employment, express or implied. Nor does this Agreement, the Plan or the Summary Plan Description in any way alter the at-will status of my employment with the Company.

**RATIFICATION BY RECEIPT OF PLAN BENEFITS:** I agree that each and every time that I receive Plan benefits, or have Plan benefits paid to a medical provider on my behalf, I ratify and reaffirm this Agreement the same as if I had signed this Agreement again on the date the benefits were paid.

**REQUIREMENTS FOR MODIFICATION OR REVOCATION:** This Agreement will survive the termination of my employment with the Company. This Agreement can only be revoked (except as provided in the paragraph below) or modified by a writing signed by both me and the Company's authorized representative that specifically states an intent to revoke or modify this Agreement, and this requirement of a signed writing cannot itself be waived except by such a signed writing.

**REVOCATION OF ACCEPTANCE:** If, after accepting this Agreement by signing below, I decide to revoke my acceptance of this Agreement, I may do so only by notifying the Company in writing by certified mail, return receipt requested, of my revocation. I understand and agree that I may not revoke my acceptance of this Agreement if the Plan has paid (or become obligated to pay) benefits to or for me. I understand and agree that I may only revoke my acceptance of this Agreement:  (a) within five (5) calendar days after the date of my signature below, or (b) within five (5) calendar days after receiving written notice of a material reduction in benefits provided by the Plan.

**VOLUNTARY AGREEMENT:** I acknowledge and agree that I have carefully read this Agreement, that I understand its terms, and that I have entered into this Agreement voluntarily and without duress, pressure or coercion from any person and without relying on any promises or representations by the Company other than those contained in this Agreement itself. I am not under the influence of alcohol or any other impairing substance, nor am I under any mental incapacity that would affect me at the time of signing this Agreement. I am aware of the consequences of signing this Agreement and, to the extent that I deem necessary, I have consulted or will consult with an attorney. Finally, I agree and acknowledge that signing this Agreement is not a condition of my employment at the Company.

3 of 4

© 2007 Sarles & Ouimet, L.L.P.



EXHIBIT "A"

# CHECK ONLY ONE OF THE FOLLOWING BOXES:

☑ I agree to the terms of this Agreement. OR ☐ I reject the terms of this Agreement.

HAzem Mrayyah
**Signature Of Employee**

12 – 14 – 12
**Date**

HAzem mrayyah
**Name Of Employee Printed**

_[signature]_
**Witness Signature**

**Witness Signature**

**Printed Name of Witness**

**Printed Name of Witness**

Accepted and Agreed: The Company

© 2007 Sarles & Ouimet, L L P.

EXHIBIT "A"

# EXHIBIT 1
# TAB 4

# SUSSER HOLDINGS, L.L.C.
# EMPLOYEE INJURY BENEFIT PLAN
# SUMMARY PLAN DESCRIPTION

## I.    GENERAL INFORMATION

Your employer (hereinafter simply "the Company") has rejected coverage for its Texas employees under the Texas Workers' Compensation Act, become a "nonsubscriber" to that Act, and does not provide workers' compensation insurance benefits to Texas employees.  Rather, the Company has voluntarily established an occupational injury benefit plan (the "Plan") under federal law.  The Plan is an employee group health and disability welfare benefit plan under the federal Employee Retirement Income Security Act of 1974 ("ERISA").  Susser Holdings, L.L.C. is the Plan Administrator.

Generally, under the Plan, necessary medical treatment expenses are provided to participating employees for accidental, work-related, on-the-job injuries, and under certain conditions disability, dismemberment, burial and death benefits will be paid.  The Plan pays these benefits without regard to the participating employee's fault or negligence and without the necessity of the participating employee proving that the Company or its employee was negligent.  The Company pays the entire cost to provide benefits under, and to operate, the Plan.  Employees participating in the Plan make no payments or payroll deductions to be eligible for Plan benefits and pay no deductibles or co-pay amounts.

This Summary is intended to briefly describe the principal provisions of the Plan.  Please read it carefully.  A complete copy of the Plan document is on file for any eligible Employee desiring more detailed information.  If a question should arise concerning the Plan, the Plan document (and not this Summary) shall govern and determine a Participant's rights.  Capitalized terms used in this Summary are defined in the Plan.

The Plan described in this Summary applies to on-the-job injuries sustained on or after the **"Effective Date,"** January 1, 2008.  The Company does not carry Texas Workers' Compensation Insurance, and the Plan does not constitute workers' compensation insurance coverage. See Exhibit "B" attached hereto.

## II.   ELIGIBILITY AND PARTICIPATION:  ELECTION AND ARBITRATION AGREEMENT

Every Texas Employee of the Company is **eligible** to participate in the Plan.  In order actually to **participate** in the Plan, however, an Employee hired on or after the Effective Date must make a written election to become a **Participant** in the Plan by executing and agreeing to the terms of an "Election And Arbitration Agreement" substantially in the form attached to this Summary as Exhibit "A".  The "Arbitration Procedures" of Section IX of this Summary are incorporated by reference into the Election And Arbitration

# EXHIBIT 2

# TAB 4

© 2007 Sarles & Ouimet, L.L.P.

regarding the Benefit sought. The notification will include the information described in items (1) through (4) of Section VII.A.1.b. above.

2. **Appeal of Adverse Benefit Determination:** A claimant seeking Dismemberment Benefits, Death Benefits and/or Burial Benefits will have a reasonable opportunity for a full and fair appeal of an adverse benefit determination by the Committee's designated representative. Such an appeal is to the Committee to review the adverse determination. The claimant will have at least 60 days after receipt of the notification of the adverse benefit determination by the Committee's designated representative to appeal to the Committee. Rules (2)-(4) of Section VII.A.2. also apply.

3. **Decision on Appeal:** The Committee's final decision on an appealed claim for Dismemberment Benefits, Death Benefits and/or Burial Benefits will be made within 60 days after the claimant submitted it in writing to the Committee (unless special circumstances require an extension of time for processing the appeal). The Committee will notify the claimant in writing of its decision on an appeal, again stating the reason or reasons for its decision and referencing the applicable Plan provisions. If an extension of time for processing is required, written notice of the need for the extension will be provided to the claimant within 60 days of the appeal's receipt. The notice of extension will state the special circumstances requiring the extension and when a decision on the claim will be made. Even in special circumstances, a decision on an appeal will be made within 120 days. The Committee will provide a claimant with written notification of its determination on the claimant's appeal of the claim. In the case of an adverse benefit determination, the notification will include the information described in items (1) through (4) of Section VII.A.3. above.

## VIII. THE PLAN'S COMMITTEE

The Committee appointed by the Plan Administrator (the Company) has discretionary and final authority to interpret and implement the provisions of the Plan. Every interpretation, choice, determination, or other exercise of authority by the Committee will be binding upon all affected parties, without restriction, however, on the right of the Committee to reconsider such action.

## IX. ARBITRATION PROCEDURES

The following provisions of Section I, Paragraph B of the Plan are incorporated by reference into, and made part of, the Election And Arbitration Agreement, the same as if they were set forth at length in the Election And Arbitration Agreement itself, and apply to the Participant (referred to throughout as "I") and to the Company:

1. **Required Notice for All Claims:** I and the Company agree that the party seeking arbitration must make a written demand for arbitration on the other party within the applicable statute of limitations. Written demand on the Company or one or more of its officers, directors, shareholders, members, employees, agents, affiliates or benefit plans shall be sent to Susser Holdings, L.L.C., Attention: Executive Vice

# EXHIBIT 2
18

© 2007 Sarles & Ouimet, L.L.P.

# TAB 4

President, P.O. Box 9036, Corpus Christi, Texas 78469 (or such other person or address as the Company may specify). If the Company wishes to invoke arbitration, it will make written demand for arbitration on me at the last address recorded in my personnel file. This demand for arbitration shall be sent to the other party (or parties) by certified or registered mail, return receipt requested. **Neither filing nor serving a lawsuit stops the applicable statute of limitations from continuing to run.**

2.     **Representation**: Any party may be represented during pre-hearing procedures (as defined below), at the arbitration hearing and/or during the arbitration appeal (as defined below) by an attorney or other representative selected by the party.

3.     **Mediation:** The Company and I agree that any arbitration that has been timely and properly demanded under Paragraph 1 above shall be stayed and shall not proceed until the parties to the arbitration have mediated the dispute with a mediator either agreed upon by all parties or, if agreement by all parties cannot be reached, by a mediator provided by Dispute Solutions, Inc. This mediation requirement may be waived by written agreement signed by all parties or their counsel. The cost of any mediation shall be split evenly between the two sides to the dispute; however, the employee's part of such mediation cost shall not exceed $50.00.

4.     **General Procedures:**

a.     The Company and I agree that the arbitration hearing will be conducted before one arbitrator (hereinafter the "hearing arbitrator") appointed by Dispute Solutions, Inc., or if Dispute Solutions, Inc. is unable to appoint an arbitrator, by the American Arbitration Association. The Company and I agree that the then-current rules of Dispute Solutions, Inc. governing employment disputes (or, if Dispute Solutions, Inc. is unable to appoint an arbitrator, then the then-current Employment Arbitration Rules and Mediation Procedures of the American Arbitration Association) shall control and be applied by the hearing arbitrator and by the appellate arbitrators (as defined below).

b.     The hearing arbitrator shall apply the substantive law (and the laws of remedies, if applicable), in the state in which the claim arose, or federal law, or both, depending upon the claims asserted. The hearing arbitrator shall also strictly apply the Federal Rules of Evidence, except that deposition testimony of a witness may be used at the arbitration hearing without regard to whether the witness is unavailable. The hearing arbitrator shall provide brief findings of fact and conclusions of law. All arbitration decisions and awards rendered pursuant to the Election And Arbitration Agreement shall be kept strictly confidential and shall not be disclosed to anyone not a witness, attorney, party representative, or party who actually attended the arbitration hearing.

c.     **The hearing arbitrator shall have the authority to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the agreement to arbitrate.** The hearing arbitrator shall have the authority to hear and rule on prehearing disputes and is

© 2007 Sarles & Ouimet, L.L.P.

# EXHIBIT 2
19



TAB 4

authorized to hold prehearing conferences by telephone or in person as the arbitrator deems necessary. The hearing arbitrator shall have the authority to hear a motion to dismiss and/or a motion for summary judgment by any party and in doing so shall apply the standards governing such motions under the Federal Rules of Civil Procedure. The hearing arbitrator shall stay any arbitration until the parties mediate the dispute, unless mediation has been waived by written agreement signed by all parties or their counsel.

**5. Pre-Hearing Procedures**: Each party will have the right to take the deposition of one individual and any expert witness designated by another party. Each party will have the right to subpoena witnesses in accordance with the Federal Arbitration Act, Title 9 of the United States Code. Additional discovery may be had only where the hearing arbitrator so orders, upon a showing of substantial need. At least 30 days before the arbitration, the parties must exchange lists of witnesses, including any experts, and copies of all exhibits intended to be used at the arbitration hearing.

**6. Arbitration Fees and Costs**: There will be both administrative fees and arbitrator compensation incurred for any arbitration hearing. The filing fee, included in the administrative fees, for the arbitration hearing will be paid $250.00 by me and the remainder by the Company. Unless I choose to pay all or a part of them, all other administrative fees and all of the hearing arbitrator's compensation will be paid by the Company. Arbitrator compensation and administrative fees are not subject to re-allocation in the award, but any fees for postponements will be paid by the party causing the postponement. Either party, at its expense, may arrange for and pay the cost of a court reporter to provide a stenographic record of the proceedings at the hearing.

**7. Attorneys' Fees**: The Company and I further agree as follows:

a. Each party shall be responsible for their own attorney's fees, if any; however, if any party prevails on a statutory claim which allows the winning party to be awarded attorney's fees, or if there is a written agreement providing for fees, the hearing arbitrator shall award reasonable fees to the prevailing party. The hearing arbitrator shall determine the prevailing party in accordance with the meaning of "prevailing party" under the Civil Rights Attorney's Fees Awards Act of 1976.

b. The hearing arbitrator shall assess attorney's fees against a party upon a showing that such party's claim, defense or position is frivolous, or unreasonable, or factually groundless.

c. If either party pursues a claim covered by this Agreement by any means other than those set forth in this Agreement, the responding party shall be entitled to dismissal of such action, and the recovery of all costs and attorney's fees and losses related to such action.



# EXHIBIT 2

20

# TAB 4

© 2007 Sarles & Ouimet, L.L.P.

**8.    Appeal Procedures:** The Company and I further agree as follows:

a.    Any party may appeal any arbitration award that has been rendered and become final under the rules governing the arbitration. The written appeal must be served in writing on the other party or parties to the arbitration and on Dispute Solutions, Inc. (or, if the American Arbitration Association appointed the hearing arbitrator, then on the American Arbitration Association) by certified mail within thirty (30) days after the hearing arbitrator caused the arbitration award to be mailed to the parties or to their representatives. The writing evidencing the appeal must specify those elements of the arbitration award that are being appealed and must contain a short statement of the appeal's basis. Once an appeal is timely served, the arbitration award by the hearing arbitrator shall no longer be considered final for purposes of seeking judicial enforcement, modification or vacation under the Federal Arbitration Act.

b.    Within fifteen (15) days after receipt of the appeal, the other party or parties may serve a written cross-appeal by serving it by certified mail on the other party or parties to the arbitration and on Dispute Solutions, Inc. (or, if the American Arbitration Association appointed the hearing arbitrator, then on the American Arbitration Association). The writing evidencing the cross-appeal must specify those elements of the arbitration award that are being appealed and must contain a short statement of the cross-appeal's basis. Once a cross-appeal is timely served, the arbitration award by the hearing arbitrator shall no longer be considered final for purposes of seeking judicial enforcement, modification or vacation under the Federal Arbitration Act, even if the appeal is subsequently withdrawn.

c.    Within forty-five (45) days after receipt of the appeal, the parties to the appeal shall select a panel of three arbitrators (hereinafter the "appellate arbitrators") utilizing the procedures to select arbitrators set forth in the then-current rules of Dispute Solutions, Inc. The hearing arbitrator shall not be eligible to serve as an appellate arbitrator.

d.    The fees and expenses of the appellate arbitrators shall be shared equally if both an appeal and a cross-appeal are served. If only an appeal is served, the fees and expenses of the appellate arbitrators shall be paid by the appellant party (or parties). Each party serving an appeal or cross-appeal shall deposit funds or post other appropriate security for the appellate arbitrators' fees, in an amount and manner determined by Dispute Solutions, Inc., (or, if the American Arbitration Association appointed the hearing arbitrator, then by the American Arbitration Association) within thirty (30) days after that party's service of an appeal or cross-appeal.

e.    The record on appeal to the appellate arbitrators shall consist of any stenographic record or other record of the hearing before the hearing arbitrator and shall include all exhibits and deposition transcripts admitted into the record by the hearing arbitrator. The parties to an appeal shall assist and

# EXHIBIT 2
21

# TAB 4

© 2007 Sarles & Ouimet, L.L.P.

cooperate with the Dispute Solutions, Inc. (or, if the American Arbitration Association appointed the hearing arbitrator, then the American Arbitration Association) in providing the record, exhibits and deposition transcripts to the appellate arbitrators.

f.      The appellate arbitrators shall establish a briefing schedule, page limitations for briefs and a date and duration for oral argument; provided, however, that prior to the appellate arbitrators' rulings on these subjects, the parties to the appeal may agree to waive briefing and/or oral argument and may agree to their own page limitations for briefs.

g.      The appellate arbitrators shall apply the same standard of review as the first-level appellate court would apply to the cause of action or defense on appeal in similar circumstances.  If both federal and state-law causes of action (and/or defenses) are before the appellate arbitrators (either in a single appeal or as the result of a cross-appeal), the appellate arbitrators shall apply only the standards of review utilized by the United States Court of Appeals for the Fifth Circuit in similar circumstances.

h.      By majority vote, the appellate arbitrators may affirm, reverse, render or modify an arbitration award.  The appellate arbitrators may remand, but they may not remand to the original hearing arbitrator.  In the event of a remand, the parties shall select a new hearing arbitrator under the procedures set forth in the rules governing the arbitration, and the fees and expenses of the new hearing arbitrator shall be shared equally by the parties to the re-hearing.  The appellate arbitrators' decision shall include a brief, written opinion addressing the issues before them, and such opinion shall be delivered to the parties and to Dispute Solutions, Inc. (or, if the American Arbitration Association appointed the hearing arbitrator, then to the American Arbitration Association) within thirty (30) days after the conclusion of any briefing schedule or any oral argument or as the parties may agree.  Fifteen (15) days after receipt of the appellate arbitrators' opinion setting forth their decision, any award by them shall be considered final for purposes of judicial enforcement, modification or vacation under the Federal Arbitration Act.

**9.      Interstate Commerce and the Federal Arbitration Act:**  I understand and agree that the Company is involved in transactions involving interstate commerce (*e.g.*, purchasing goods and services from outside Texas which are shipped to Texas; utilizing the interstate mail, telephone and highway systems; operating facilities serving people from various states; and recruiting and advertising outside Texas) and that my employment with the Company and participation in the Plan involve such commerce.  The Federal Arbitration Act, Title 9 of the United States Code, will govern the interpretation, enforcement, and all judicial proceedings under and/or with respect to the Election And Arbitration Agreement and Section I, Paragraph B of the Plan (Section IX of this Summary).

# EXHIBIT 2

22

© 2007 Sarles & Ouimet, L.L.P.

# TAB 4

CAUSE NO. 2013-CCV-61910-1

| | | |
|---|---|---|
| HAZEM MRAYYAN, | § | IN THE COUNTY COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | AT LAW NUMBER ONE |
| ERIC SCOTT POWELL, | § | |
| MERRELL LEASE SERVICE, INC. | § | |
| and STRIPES LLC, | § | |
| | § | |
| Defendants. | § | NUECES COUNTY, TEXAS |

## ORDER GRANTING STRIPES LLC'S APPLICATION FOR ORDER FOR ARBITRATION

Defendant Stripes LLC having filed with its Original Answer an Application for Order for Arbitration requesting a formal written order enforcing the automatic stay imposed by Section 171.025(a) of the Civil Practice and Remedies Code on any further proceedings against Stripes LLC in this lawsuit, the Court is of the opinion that the statutory stay should be formalized by this Order. It is, therefore,

ORDERED that Plaintiff Hazem Mrayyan's claims and causes of action and all further proceedings against Defendant Stripes LLC be, and they hereby are, stayed pending resolution of these two parties' claims, causes of action and defenses in binding arbitration before Dispute Solutions, Inc. ("DSI") in accordance with their Election And Arbitration Agreement and the DSI Arbitration Rules.

SIGNED this 2 day of December, 2014.

_____
Judge Presiding

DEFENDANT'S
EXHIBIT
2

ORDER GRANTING STRIPES LLC'S APPLICATION FOR ORDER FOR ARBITRATION—1

TAB 5

AGREED AS TO FORM ONLY:

HILLIARD MUÑOZ GONZALES LLP

By: _Kim Wilson_

Robert C. Hilliard
State Bar No. 09677700
Rudy Gonzales, Jr.
State Bar No. 08121700
Catherine D. Tobin
State Bar No. 24013642
Kimberly D. Wilson
State Bar No. 24066035
719 S. Shoreline Boulevard, Ste. 500
Corpus Christi, TX 78401
Telephone No.: (361) 882-1612
Facsimile No.: (361) 882-3015

DAVID T. BURKETT
State Bar No. 03410500
*THE BURKETT LAW FIRM*
538 S. Tancahua
Corpus Christi, Texas 78401
Tel: (361) 882-8822
Fax: (361) 883-0733

**ATTORNEYS FOR PLAINTIFF**

Gary D. Sarles
Texas Bar No. 17651100
Email: gsarles@sarleslaw.com
O. Paul Dunagan
Texas Bar No. 06202700
Email: dunagan@sarleslaw.com
**SARLES & OUIMET**
370 Founders Square
900 Jackson Street
Dallas, Texas 75202-4436
Telephone: (214) 573-6300
Telecopier: (214) 573-6306

**ATTORNEYS FOR DEFENDANT
STRIPES LLC**

TAB 5

## ARBITRATION RULES

### 1.  NOTIFICATION OF USE OF DSI

Any company intending to incorporate these rules or to refer to the alternative dispute resolution (ADR) services of Dispute Solutions, Inc. (DSI) in an ADR plan shall, at least 30 days prior to the planned effective date of the program:

(a)  notify DSI of its intention to do so and,

(b)  provide DSI with a copy of the alternative dispute resolution plan.

DSI may decline its administrative services to any company that does not comply with this requirement.

### 2.  APPLICABLE RULES OF ARBITRATION

These rules, as amended from time to time by DSI, shall apply in the form in effect at the time the Demand for arbitration or joint submission is received by DSI.

### 3.  DSI AS ADMINISTRATOR OF THE ARBITRATION

When parties agree to arbitrate under these rules, or when they provide for arbitration by DSI and an arbitration is initiated under these rules, they thereby authorize DSI to administer the arbitration. The authority and duties of DSI are described in these rules and may be carried out as DSI's representatives may direct.

### 4.  INITIATION OF ARBITRATION

Arbitration shall be initiated in the following manner.

(a)  The parties may make a joint submission for arbitration.

(b)  In the absence of a joint submission for arbitration:

   (i)  The initiating party (hereinafter "Claimant[s]") <u>shall</u>:

   (1)  File with DSI two (2) copies of a written notice (hereinafter "Demand") of its intention to arbitrate, within the time limit established by the applicable statute of limitations. Neither filing nor serving a lawsuit complies with this requirement. Any dispute over the timeliness of the demand shall be referred to the arbitrator. The Claimant shall include with the Demand a copy of the applicable arbitration agreement. The Demand shall set forth the names, addresses, and telephone numbers of the parties; a brief statement of the nature of the dispute; the amount in controversy, if any; the remedy sought; and the requested hearing location.

   (2)  Simultaneously serve a copy of the Demand on the other party (hereinafter "Respondent[s]").

   (3)  Include with its Demand the applicable filing fee, unless the parties agree to some other method of fee advancement.

   (ii)  The Respondent(s) shall file an Answer with DSI within 15 days after service of the Demand. The Answer shall provide the Respondent's brief response to the Demand. The Respondent(s) shall file the Answer with DSI and serve a copy on the Claimant. If no Answer is filed within the stated time, Respondent will be deemed to deny the Demand. Failure to file an Answer shall not delay the arbitration.

   (iii)  The Respondent(s):

   (1)  May file with DSI two (2) copies of a Counterclaim within 15 days after the service of the Demand. Any Counterclaim shall set forth the nature of the claim, the amount in controversy, if any, and the remedy sought.

   (2)  Simultaneously serve a copy of any Counterclaim on the Claimant.

   (3)  Shall include with its filing the applicable filing fee provided for by these rules.

   (iv)  The Claimant may file with DSI two (2) copies of an Answer to the Counterclaim within 15 days after service of the counterclaim. The Answer shall provide Claimant's brief response to the Counterclaim. The Claimant shall file the Answer with DSI and serve a copy on the Respondent. If no Answer is filed within the stated time, Claimant will be deemed to deny the Counterclaim. Failure to file an Answer shall not delay the arbitration.

DEFENDANT'S EXHIBIT
3

TAB 6

5. JURISDICTION

    (a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.

    (b) The arbitrator shall have the power to determine the existence or validity of a contract that includes an arbitration clause. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

    (c) A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of its Answer to the Demand or Counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

6. ARBITRATION MANAGEMENT CONFERENCE

As soon as practicable, an arbitration management conference shall be held among the parties and/or their attorneys or other representatives and the arbitrator(s). Unless the parties agree otherwise, the Arbitration Management Conference will be conducted by telephone conference call. At the Arbitration Management Conference the matters to be considered shall include, without limitation:

    (a) the issues to be arbitrated;
    (b) the date, time, place, and estimated duration of the hearing;
    (c) the resolution of outstanding discovery issues and establishment of discovery parameters;
    (d) the law, standards, rules of evidence, and burdens of proof that are to apply to the proceeding;
    (e) the exchange of stipulations and declarations regarding facts, exhibits, witnesses, and other issues;
    (f) the names of witnesses (including expert witnesses), the scope of witness testimony, and witness exclusion;
    (g) the value of bifurcating the arbitration into a liability phase and damages phase;
    (h) the need for a stenographic record;
    (i) whether the parties will summarize their arguments orally or in writing;
    (j) the form of the award;
    (k) any other issues relating to the subject or conduct of the arbitration;
    (l) the allocation of attorney's fees and costs;
    (m) the specification of undisclosed claims;
    (n) the extent to which documentary evidence may be submitted at the hearing;
    (o) the extent to which testimony may be admitted at the hearing telephonically, over the internet, by written or video-taped deposition, by affidavit, or by any other means.

The arbitrator shall issue oral or written orders reflecting his or her decisions on the above matters and may conduct additional conferences when the need arises.

7. DISCOVERY

The arbitrator shall have the authority to order such discovery, by way of disclosures, deposition, interrogatory, document production, request for admission, request for inspection, or otherwise, as the arbitrator deems necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration.

If a discovery dispute arises, the parties should notify DSI so that it may be presented to the arbitrator for determination. See Arbitration Rule 12.

8. FIXING OF LOCALE (DATE, TIME, AND PLACE OF HEARING)

If the parties have not agreed and cannot agree to a location for the arbitration, the arbitrator(s) shall decide. The arbitrator(s) shall set the date, time, and place for each hearing. The parties shall respond to requests for hearing dates in a timely manner, cooperate in scheduling the earliest practicable date, and adhere to the established hearing schedule.

9. NUMBER, QUALIFICATIONS, AND APPOINTMENT OF ARBITRATORS

    (a) If the arbitration agreement does not specify the number of arbitrators or the parties do not agree otherwise, the dispute shall be heard and determined by one arbitrator.





TAB 6



*Robert C. Hilliard
Jacobo G. Muñoz
Catherine D. Tobin
*Rudy Gonzales, Jr.
John B. Martinez
*T. Christopher Pinedo
Gonzalo Joseph Barrientos

*Associates*
Marion M. Reilly
Neely Balko
Todd A. Hunter, Jr.
Kimberly Wilson
Austin L. Webber
Emily N. Hilliard
*Alyssa K. Chaplin
José Luis Muñoz

*Of Counsel*
Juan Reyna

Hilliard Muñoz Gonzales L.L.P.

719 S. SHORELINE, SUITE 500
CORPUS CHRISTI, TEXAS 78401
BUS: (361) 882-1612  FAX: (361) 882-3015
TOLL: 800-334-3298
www.hmglawfirm.com

March 6, 2015

**VIA CMRRR: 7014 2870 0000 1830 1356**
**& U.S. REGULAR MAIL**
Attn: Executive Vice President
Susser Holdings, LLC
P.O. Box 9036
Corpus Christi, TX 78469

RE:   HAZEM MRAYYAN'S DEMAND FOR ARBITRATION

To whom it may concern,

Please be advised that I along with David Burkett represent Hazem Mrayyan in connection with an incident, which occurred on March 27, 2013 while he was working in the course and scope of his employment for Stripes, LLC at store #2160 in Corpus Christi, Texas. The incident in question involved a pedestrian/vehicle accident in which a vehicle driven by Eric Scott Powell, while in the course and scope of his employment for Merrell Lease Service, Inc., struck and severely injured Hazem Mrayyan while he was performing his duties as an employee of Stripes, LLC and in the course and scope of his employment for Stripes, LLC. The incident in question took place on the premises of the #2160 Stripe's store located at Morgan Street and Crosstown in Corpus Christi, Texas.

As a result of the incident in question, Mr. Mrayyan sustained substantial personal and bodily injuries. The incident in question resulted from the negligence of Stripes, LLC. As a result of the injuries in question, Hazem Mrayyan has suffered personal injuries and hereby seeks compensation for, but not limited to:

a.   Past and future physical pain and mental anguish;
b.   Past and future impairment;
c.   Past and future disfigurement;
d.   Past and future loss of earning capacity;
e.   Past and future lost wages;
f.   Past and future medical expenses; and,



DEFENDANT'S
EXHIBIT
4

* Mr. Hilliard is Board Certified in Personal Injury Trial Law and Civil Trial Law by the Texas Board of Legal Specialization
* Mr. Gonzales is Board Certified in Personal Injury Trial Law by the Texas Board of Legal Specialization
*Mr. Pinedo is licensed to practice law in Texas, Arizona, and California
*Ms. Chaplin is licensed to practice in Massachusetts

TAB 7

g.   Exemplary damages.

**Mr. Mrayyan hereby demands arbitration.**

This arbitration demand letter serves as formal notice, in accordance with Section IX(1) of the Susser Holdings, LLC Employee Injury Benefit Plan, to Susser Holdings, LLC, and all of its officers, directors, shareholders, members, employees, affiliates, representatives, agents, owners, and/or benefit plans regarding the injuries he sustained on or about March 27, 2013.

This demand for arbitration also serves as notice to Susser Holdings Corporation, Stripes Holdings, LLC, Applied Petroleum Technologies, Ltd., Stripes No. 1009, LLC, Stripes, LLC, Susser Financial Services, LLC, Stripes Acquisition, LLC TCFS, Holdings, Inc., Town and Country Food Stores, Inc. Corpus Christi, Reimco, LLC, Susser Petroleum Company, LLC, T&C Wholesale, Inc., GoPetro Transport, LLC, SSP BevCo II, LLC, SSP Bev Co I, LLC, SSP Beverage, LLC, TND Beverage, LLC, C&G Investments, LLC, and Susser Company, Ltd, and all of its officers, directors, shareholders, members, employees, affiliates, parent companies, representatives, agents, owners, and/or benefit plans.

If for any reason you believe this notice and demand for arbitration is insufficient to put you on notice of Plaintiff's claims, please advise me immediately.

Very truly yours,

HILLIARD MUÑOZ GONZALES, L.L.P.

Rudy Gonzales

RG/th

CC:

**VIA CMRRR: 7014 2870 0000 1830 1363**
**& U.S. REGULAR MAIL**
Gary D. Sarles
O. Paul Dunagan
Sarles & Quimet
900 Jackson Street, Suite 370
Dallas, TX 75202

# TAB 7

(214) 573-6300
**Attorneys for Stripes, LLC &**
**The Susser Holdings, LLC Employee Injury Benefit Plan**

**VIA CMRRR: 7014 2870 0000 1830 1370**
**& U.S. REGULAR MAIL**
Dispute Solutions
P.O. BOX 460115
Garland, TX 75046

**VIA E-MAIL to: burketta@aol.com**
David Burkett
Burkett Law Firm
538 South Tancahua Street
Corpus Christi, TX 78401
(361) 883-6551

**VIA E-MAIL to cynthia.aguirre@susser.com**
Cynthia Aguirre

# TAB 7

## Colleen

| | |
|---|---|
| **From:** | Wufoo <no-reply@wufoo.com> |
| **Sent:** | Thursday, March 19, 2015 8:17 AM |
| **To:** | colleen@dsi-adr.com |
| **Subject:** | Demand For Arbitration Form [#28] |

**Company**   Susser Holdings, LLC d/b/a Stripes

**Your Name**   Hazem Mrayyan; Attorney – Rudy Gonzales

**Your Address**   719 S. Shoreline, Suite 500, Corpus Christi, TX 78401

**Email**   rg_group@hmglawfirm.com

**Phone Number**   (361) 882-1612

**Supervisor's Name**   Guillen

**Description of the Employee's Claim against the Company:**

On or about Wednesday, March 27, 2013, Plaintiff, HAZEM MRAYYAN, was working at the #2160 Stripes store located at 2002 Morgan St. in Corpus Christi, Texas in Nueces County. HAZEM MRAYYAN was cleaning a fuel tank access opening or "spill bucket" located near the air pump facility of the Stripes store parking lot. Plaintiff HAZEM MRAYYAN was working in the course and scope of his employment for Defendant STRIPES, LLC at the time of the incident. ERIC SCOTT POWELL, was operating a 2004 White Chevrolet C/K 3500 owned by and under the control of MERRELL LEASE SERVICE, INC. Defendant ERIC SCOTT POWELL parked near the air pump, visited with Plaintiff HAZEM MRAYYAN, and inflated his tire. After having actual knowledge of Plaintiff HAZEM MRAYYAN's presence and ample opportunity to observe Plaintiff HAZEM MRAYYAN working in the vicinity. HAZEM MRAYYAN got into his truck and proceeded to run over Plaintiff HAZEM MRAYYAN causing him substantial bodily injuries. After running over Plaintiff HAZEM MRAYYAN, he reversed his truck and ran over Plaintiff a second time.

Plaintiff HAZEM MRAYYAN alleges that Defendant STRIPES, LLC and its agents, employees and servants, had a duty to exercise reasonable care in providing Plaintiff HAZEM MRAYYAN with a safe place to work.

A. Negligence

1



TAB 8



DEFENDANT'S EXHIBIT
5

Plaintiff HAZEM MRAYYAN's injuries and damages, asserted in the current litigation, were proximately caused by Defendant STRIPES, LLC'S negligence, which either by act or omission, alone or in conjunction with others not listed herein, were each and all a proximate cause of the accident made the basis of this lawsuit. Defendant STRIPES, LLC was negligent in the following ways:

a. Failure to provide Plaintiff with a safe workplace;

b. Failure to ensure that its employee performed his work in a safe manner;

c. Failure to properly supervise Plaintiff;

d. Failure to use methods, processes, and safeguards that were reasonably necessary to protect the life, health and safety of Plaintiff;

e. Failure to provide cones, barricades, or signage to eliminate traffic in the work area for the safety of Plaintiff;

f. Failure to provide a brightly colored vest for Plaintiff to wear; and

g. Failure to provide necessary safety training to Plaintiff

B. Gross Negligence

Plaintiff repeats and incorporates by reference all other paragraphs of this Petition as if fully set forth herein. Defendant's acts and omissions constituted gross negligence, and directly and proximately caused Plaintiff's injuries. Moreover, Defendant demonstrated conscious indifference to the safety and welfare of Plaintiff for actions and omissions that amount to gross negligence. Defendant is liable to Plaintiff for gross negligence -to wit:

a. Defendant consciously and/or deliberately engaged in recklessness, willfulness, wantonness and/or malice through Defendant's actions, and/or inactions as stated herein and Defendant should be held liable in punitive and exemplary damages to Plaintiff.

b. Defendant's actions or inactions directly and proximately caused injury to Plaintiff, which resulted in the damages detailed below.

Gross negligence" according to Texas Civil Practice & Remedies Code § 41.001(11)(A)-(B) means an act or omission:

2

# TAB 8

a) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

b) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

As a result of such gross negligence of Defendant, the Plaintiff is entitled to exemplary damages.

| **The names of the persons involved:** | Plaintiff – Hazem Mrayyan |
|---|---|
| | Eric Scott Powell |
| | Merrell Lease Service, Inc. |
| | Stripes, LLC – Defendant |
| | Susser Holdings, LLC d/b/a Stripes – Defendant |

**Relief sought by the Employee:**

DAMAGES

As a direct and proximate result of the occurrence made the basis of this lawsuit, Mr. Mrayyan suffered severe personal injuries and incurred the following damages:

a. Past and future physical pain and mental anguish;

b. Past and future loss of earning capacity;

c. Past and future lost wages;

d. Past and future disfigurement;

e. Past and future medical expenses;

f. Past and future physical impairment;

g. Past and future loss of consortium;

3

# TAB 8

h. Past and future loss of household services.

EXEMPLARY DAMAGES

The conduct of Stripes was more than momentary thoughtlessness, inadvertence, or error of judgment, and was of such a character as to make Stripes guilty of gross negligence. Stripes' acts and or omissions involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others of which Stripes had actual awareness, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others, and Mr. Mrayyan therefore sues for the maximum amount of exemplary damages.

4

# TAB 8